William Turley, Esq. (122408)
bturley@turleylawfirm.com
David Mara, Esq. (230498)
dmara@turleylawfirm.com
Jamie Serb, Esq. (289601)
jserb@turleylawfirm.com
**THE TURLEY & MARA LAW FIRM, APLC**
7428 Trade Street
San Diego, California 92121
Telephone: (619) 234-2833
Facsimile: (619) 234-4048
Attorneys for Plaintiffs
[*Additional Counsel on Next Page*]

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALAN ATCHISON, on behalf of himself, all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ASHLEY FURNITURE INDUSTRIES, INC., and DOES 1 through 100, inclusive,<br><br>Defendants. | Lead Case No. ED CV17-00528 JAK (SPx *Consolidated with* Case No. ED CV17-01427 JAK (SPx)<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date: April 23, 2018<br>Time: 8:30 a.m.<br>Judge: Hon. John A. Kronstadt<br>Ctrm: 10B |
| JAMES BLAIR, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ASHLEY DISTRIBUTION SERVICES, INC., and DOES 1 through 50 inclusive,<br><br>Defendants. | *Atchison* Action Filed:    February 8, 2017<br>*Blair* Action Filed:        April 13, 2017<br>Trial Date:     None Set |

1  **BLUMENTHAL, NORDREHAUG & BHOWMIK LLP**
   Norman B. Blumenthal (SBN 068687)
2  Kyle R. Nordrehaug (SBN 205975)
3  Aparajit Bhowmik (SBN 248066)
   2255 Calle Clara
4  La Jolla, CA 92037
   Telephone: (858) 551-1223
5  Facsimile: (858) 551-1232
6
   Attorneys for Plaintiffs
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TO:  ALL PARTIES HEREIN AND TO THEIR COUNSEL OF RECORD**

PLEASE TAKE NOTICE that Plaintiffs, Alan Atchison and James Blair (hereinafter "Plaintiffs"), moves this Court for an order:  (1) certifying the Settlement Class for settlement purposes only; (2) appointing Plaintiffs Alan Atchison and James Blair as the Class Representatives for the Settlement Class; (3) appointing William Turley, David Mara, and Jamie Serb of The Turley & Mara Law Firm, APLC and Norman B. Blumenthal, Kyle R. Nordrehaug, and Aparajit Bhowmik of Blumenthal, Nordrehaug & Bhowmik LLP as Class Counsel for the Settlement Class; (4) preliminarily approving the settlement embodied in the Class Action Settlement Agreement and Stipulation, subject to the final review by the Court at Final Approval; (5) approving the Notice of Settlement ("Notice") and the plan for distribution of the Notice to Class Members; (6) appointing ILYM Group, Inc. as the Settlement Administrator; (7) establishing deadlines for Class Members to submit a request for exclusion and to submit objections to the Settlement; and (8) Scheduling a Final Approval Hearing.

//
//
//
//
//
//
//
//
//
//
//

This motion is set for determination on April 23, 2018, at 8:30 a.m. in Courtroom No. 10B in the First Street Courthouse located at 350 W. First Street, Los Angeles, California 90012. This motion is based upon this notice, the accompanying Memorandum of Points & Authorities filed herewith, the accompanying Declarations of William Turley and Norman Blumenthal filed herewith, the accompanying Declarations of Plaintiffs Alan Atchison and James Blair filed herewith, the Class Action Settlement Agreement and Stipulation and all exhibits thereto, the filings on record in this case, and upon such further evidence, both documentary and oral, that may be presented at the hearing of this motion.

Dated: March 26, 2018

**THE TURLEY & MARA LAW FIRM, APLC**

**BLUMENTHAL, NORDREHAUG & BHOWMIK**


By:/s/ *Jamie Serb*
    WILLIAM TURLEY
    DAVID MARA
    JAMIE SERB
    KYLE NORDREHAUG
    NORM BLUMENTHAL
    Attorneys for Plaintiffs

# **TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | FACTUAL AND PROCEDURAL BACKGROUND | 1 |
| | a. Investigation | 2 |
| | b. Settlement Negotiations | 3 |
| III. | SUMMARY OF SETTLEMENT | 3 |
| | a. The Proposed Class | 3 |
| | b. PAGA Members | 3 |
| | c. Settlement Terms | 4 |
| |   i. Named Plaintiffs' Enhancement and General Release Payments | 4 |
| |   ii. Attorneys' Fees and Costs | 6 |
| |     1. The Anticipated Attorneys' Fee Request is Reasonable Under the "Common Fund/Percentage" Analysis | 6 |
| |       a. The Common Fund Doctrine | 7 |
| |       b. The Percentage Requested is Reasonable | 8 |
| |       c. The Fee Requested is Within the Range of Fees Approved in Comparable Cases | 9 |
| |     2. Fee Is Reasonable Per A Lodestar Cross-Check | 9 |
| |       a. Counsel's Hourly Rates are Reasonable | 10 |
| |       b. Counsel's Total Hours are Reasonable | 11 |
| |   iii. Settlement Administration Costs | 11 |
| |   iv. Settlement Payments to PAGA Members | 12 |
| |   v. Calculation of Settlement Payments to Settlement Class Members | 12 |
| |   vi. Distribution of Funds and Uncashed Checks | 13 |
| | d. Release of Claims by Settlement Class Members | 13 |
| IV. | THE CLASS SHOULD BE CONDITIONALLY CERTIFIED | 15 |

a.  Rule 23(a) Requirements are Met for the Class                 15

    i.  Numerosity                                               15

    ii.  Commonality                                            16

    iii.  Typicality                                           16

    iv.  Adequacy                                               17

b.  The Rule 23(b) Standards Are Satisfied                        17

    i.  Common Issues Predominate                              17

    ii.  The Class Action Device Is Superior                   18

    iii.  No Manageability Issues Preclude Certification       18

c.  Plaintiffs' Counsel Should be Appointed as "Class Counsel"    19

V.   THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED               19

a.  Federal Rule of Civil Procedure, Rule 23(e)                   19

b.  The Settlement Resulted from Arm's-Length Negotiations        21

c.  The Balancing of the Factors                                  21

d.  Range of Exposure and Reasonable Discount                     23

VI.  NATURE AND METHOD OF NOTICE                                  25

VII. CONCLUSION                                                    25

# TABLE OF AUTHORITIES

*Cases*

*Advertising Specialty Nat'l Asso. v. Federal Trade Com.,*
    238 F.2d 108 (1st Cir. 1956) ... 15

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) ... 17

*Arias v. Superior Ct. (Dairy)*,
    46 Cal. 4th 969 ... 4

*Armenta v. Osmose, Inc.* (2005)
    135 Cal.App.4th 314 ... 21

*Armstrong v. Davis*,
    275 F.3d 849 (9th Cir. 2001) ... 16

*Bell v. Farmers Ins. Exch.*,
    115 Cal. App. 4th 715 (2004) ... 7

*Birch v. Office Depot*,
    S.D. Cal. 2007, USDC, Case No. 06 CV 1690 ... 9

*Bluford v. Safeway, Inc.*
    (2013) 216 Cal.App.4th 872 ... 22

*Brinker Restaurant Corp. v. Superior Court*,
    53 Cal.4th 1004 (2012) ... 11, 18, 19, 24

*Cardenas v. McLane Foodservices, Inc.*
    (C.D. Cal. 2011) 796 F.Supp.2d 1246 ... 21

*Cardenas v. McLane Foodservice, Inc.*,
    2011 WL 379413 at *3 (C.D. Cal. Jan. 31, 2011) ... 4

*Chun-Hoon v. McKee Foods Corp.*,
    716 F.Supp.2d 848 ... 10

*City and County of San Francisco v. Sweet*,

12 Cal.4th 105 (1995)                                              7

*Class Plaintiffs v. City of Seattle,*
    955 F.2d 1268 (9th Cir. 1992)                              20

*Cook v. Niedert,*
    142 F.3d 1004 (7th Cir. 1998)                              5

*Dirienzo v. Dunbar Armored, Inc.,*
    USDC Southern District, Case No. CV-09-2745 DMS JMA        9

*Domino's Pizza Overtime Cases,*
    Orange County Superior Court Case No. JCCP 4498            9

*Doninger v. Pac. Nw. Bell, Inc.,*
    564 F.2d 1304 (9th Cir. 1977)                              15

*Dukes v. Wal-Mart Stores, Inc.*
    (2011) 131 S.Ct. 2541                                      21

*Early v. Superior Court,*
    79 Cal.App.4th 1420 (2000)                                 5

*Flannery v. California Highway Patrol,*
    61 Cal. App. 4th 629 (1998)                                11

*Gatreaux v. Pierce,*
    690 F.2d 616 (7th Cir. 1982)                               20

*Gonzalez v. Downtown LA Motors, LP*
    (2013) 215 Cal.App.4th 36                                  21

*Grant v. Capital Mgmt. Servs., L.P.,*
    2013 WL 6499698 (S.D. Cal. 2013)                           19

*Green, et al. v. Penske Logistics, L.L.C., et al.,*
    USDC Southern District, Case No. CV-09-0069 DMS (CAB)     9, 16

*Hanlon v. Chrysler Corp.,*
    150 F. 3d 1011 (9th Cir. 1998)                      16, 18, 19, 20

*In Re Consumer Privacy Cases*,
    175 Cal. App. 4th 545 (2009)    9

*In re Heritage Bond Litigation*,
    2005 WL 1594403 (C.D. Cal. 2005)    19-20

*In re Portal Software, Inc. Securities Litigation*,
    2007 U.S. Dist. LEXIS 88886, 2007 WL 4171201 (N.D. Cal. 2007)    10

*In re Surebeam Corp. Secs. Litig.*,
    2004 WL 5159061 (S.D. Cal. 2004)    17

*Ketchum v. Moses*
    (2001) 24 Cal.4th 1122    10

*Koehl v. Verio, Inc.*,
    142 Cal.App.4th 1313 (2006)    5

*Laffitte v. Robert Half Intern., Inc.*
    (2016) 1 Cal.5th 480    8

*Lazarin v. Pro Unlimited, Inc.*,
    2013 WL 3541217 (N.D. Cal. 2013)    18

*Lealao v. Beneficial California, Inc.*,
    82 Cal. App. 4th 19 (2000)    8

*Leyva v. Medline Indus.*,
    716 F.3d 510 (9th Cir. 2013)    18

*Mayville, et al. v. Kor Hotel Group, L.L.C., et al.*,
    USDC Central District, Case No.CV-04-8461 ABC (RCx)    9

*Millan v. Cascade Water Servs.*,
    No. 12-cv-01821, 2016 U.S. LEXIS 72198 (E.D. Cal. June 2, 2016)    7

*Nat'l Rural Telecommunication Cooperative v. Directv, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004)    15, 20

*New York Gaslight Club, Inc. v. Carey*,
    447 U.S. 54 (1980)                                   11

*PLCM Group, Inc. v. Drexler*
    (2000) 22 Cal. 4th 1084                               10

*Quinn v. State of California*,
    15 Cal.3d 162 (1995)                                  7

*Reinhardt v. Gemini Motor Transport*
    (E.D. Cal.2012) 869 F.Supp.2d 1158                21

*Roberts v. Texaco*,
    979 F. Supp. 185 (S.D.N.Y. 1997)                5

*Rodriguez v. Hayes*,
    591 F.3d 1105 (9th Cir. 2010)                     16

*Rodriguez v. West Publishing Corp.*,
    563 F.3d 948 (9th Cir. 2009)                      20

*Serrano v. Priest*,
    20 Cal.3d 25 (1977) ("*Serrano III*")           8, 10

*Serrano v. Priest*,
    32 Cal.3d 621 (1982) ("*Serrano IV*")           11

*Staton v. Boeing*,
    327 F.3d 938 (9th Cir. 2003)                      5

*Telecomm. Corp. v. DirectTV*,
    221 F.R.D. 523 (C.D. Cal. 2004)                 24

*Thayer v. Wells Fargo Bank* (2001)
    92 Cal.App.4th 819                               10

*Thornton v. East Texas Motor Freight*,
    497 F.2d 416 (6th Cir. 1974)                     6

*United Steel, Paper & Forestry, Rubber, Mfg. Energy v. Conoco Phillips Co.*,
    593 F.3d 802 (9th Cir. 2010)    15

*Whiteway v. Fedex Kinkos Office & Print Services, Inc.,*
    No. 05-2320, 2007 U.S. Dist. LEXIS 95398 (N.D. Cal. Dec. 17, 2007)    5

*Statutes and Rules*

Fed. R. Civ. P. 23    16, 17, 18

29 U.S.C. § 216(b)    7

*Labor Code* § 218.5    5

*Secondary Authority*

*Manual of Complex Litigation*, Fourth Ed., (2004)    20

Newberg, 2 *Newberg on Class Actions*    8-9, 24

## I.  INTRODUCTION

The Parties seek preliminary approval of a proposed $850,000 non-reversionary class action settlement on behalf of all persons who are or have been employed by Defendant Ashley Distribution Services, Inc. ("ADS" or "Defendant") in the State of California as truck drivers in the position of California Less Than Load Drivers ("CA LTL"), California Point to Point Drivers ("CA PTP"), California Yard Drivers, California Shuttle Drivers, and non-California Drivers ("Non-CA Drivers"), to the extent that ADS's records show that the non-California Drivers made at least 1 trip into California during the Class Period.[1] Alan Atchison and James Blair ("Plaintiffs"), former piece-rate drivers for ADS, allege that ADS's piece rate pay failed to provide wages for all time worked, and failed to provide lawful meal and rest breaks in violation of California law.[2] There are approximately 255 class members with an estimated average settlement share of approximately **$2,205.86**[3], less applicable taxes.

The proposed settlement is reflective of the strengths and vulnerabilities of Plaintiffs' claims and the risks of losing on the merits to ADS's affirmative defenses. When taking this into consideration, the proposed settlement that projects an average Class Member share of $2,205.86 is in the best interests of the class. It is therefore requested that the Court grant preliminary approval of the settlement, approve the Class Notice, appoint Plaintiffs as Class Representatives, appoint Plaintiffs' counsel as Class Counsel, appoint ILYM Group, Inc. as the Settlement Administrator, schedule a Final Approval Hearing, and provisionally certify the class.

## II. FACTUAL AND PROCEDURAL BACKGROUND

This case involves wage and hour claims against ADS, a company headquartered in Wisconsin that offers cargo transportation services nationwide, including throughout California. ADS employs yard and shuttle drivers, CA PTP

---

[1] The Class Period extends from February 8, 2013, to the earlier of 150 days after full execution of the Settlement Agreement or entry of the Preliminary Approval Order.
[2] Additionally, Plaintiffs allege claims for waiting time penalties and wage statement violations, which were derivative of (and depended on the strength of) their claims for unpaid wages.
[3] Net Settlement Amount ("NSA") $562,494 / 255 Class members.

PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL   Case No ED CV17-00528 *Consolidated with:* Case No. 17-01427

– 1 –

drivers, CA LTL drivers, and non-CA drivers who drove into California. On February 8, 2017, Plaintiff PTP driver Atchison filed a complaint in the San Bernardino County Superior Court, case number CIVDS1702285 ("*Atchison* Action"). Plaintiff Atchison's complaint alleged that his piece rate pay did not pay for his rest breaks and non-driving time. He pled causes of action for failure to pay straight and overtime wages, failure to provide meal and rest periods, waiting time penalties, wage statement violations, and violation of Bus. Prof. Code §§ 17200 *et seq*. On April 13, 2017, another PTP driver, Plaintiff Blair filed a complaint in the same Court, case number CIVDS1706807, alleging similar causes of action ("*Blair* Action"). Pursuant to the Class Action Fairness Act of 2005 (CAFA), 28 U.S.C. § 1332(d), ADS removed the *Atchison* Action on March 20, 2017 and the *Blair* Action on July 17, 2017.[4] Thereafter, Plaintiffs filed a consolidated complaint on September 18, 2017, which alleges the above claims and adds a cause of action under the Private Attorneys General Act (PAGA), Labor Code § 2698, *et seq*. Turley Decl. ¶ 36.

### a. Investigation

The *Atchison* Parties met and conferred over a discovery plan prior to filing their Rule 26(f) Report on April 14, 2017, which was later amended on May 3, 2017. The Parties attended a Scheduling Conference on April 24, 2017 and, on May 3, 2017, the Parties were ordered to complete private mediation no later than December 1, 2017. The *Blair* Parties met and conferred regarding consolidation prior to filing their Joint Report on August 18, 2017. By Order dated August 28, 2017, the Court ordered the *Blair* Action to be consolidated with the *Atchison* Action. Thereafter, the parties engaged in initial discovery in advance of early mediation. Turley Decl. ¶ 37.

Plaintiffs propounded special interrogatories and requests for production of documents, all seeking to discover information regarding ADS's operational policies and practices, employee handbooks, ADS's meal and rest break policies, Plaintiffs'

---

[4] Defendant is required to give notice of the proposed settlement to the appropriate State official of each State in which a class member resides and the appropriate Federal office within ten (10) days after the proposed settlement is filed in court. 28 U.S.C. § 1715(b).

personnel files, wage statements, and time records. Prior to attending mediation, ADS produced these documents, in addition to workweek data, the breakdown of class members per job title, the average hourly and piece-rate wage, and the average shift length. ADS likewise served written discovery on Plaintiffs to determine the factual basis for their claims. Turley Decl. ¶ 38.

### b. Settlement Negotiations

On November 29, 2017, the Parties engaged in a lengthy private mediation with respected wage and hour mediator, Mark Rudy. After an all-day arm's-length mediation, the Parties reached an agreement on settlement, the terms of which were initially memorialized in a Memorandum of Understanding. Thereafter, the Parties negotiated a long form settlement agreement, of which the Parties now seek preliminary approval. Turley Decl. ¶ 39; **Exh. 1** (Settlement Agreement).

## III.    SUMMARY OF SETTLEMENT

### a. The Proposed Class

The Settlement Agreement proposes a settlement for all Class Members within the Class Period. "Class Members" and the proposed "Class" are defined as:

> All persons who are employed or have been employed by Defendant ADS in the State of California as truck drivers during the Class Period in the position of CA LTL, CA PTP, California Yard Drivers, California Shuttle Drivers, and Non-CA Drivers to the extent Defendant's records show that the Non-CA Driver made at least 1 trip into California during the Class Period.[5]

There are approximately 255 Class Members. Turley Decl. ¶ 40, Exh. 1 at ¶ 3, 5.

### b. PAGA Members

As the Consolidated Complaint also includes claims for penalties under the PAGA, the Settlement Agreement proposes payments to PAGA Members – i.e. those Class Members who qualify as aggrieved employees within the statutory period and are eligible to receive penalties under PAGA for the alleged violations. Only PAGA Members will receive a pro rata share of 25% of the PAGA Payment, weighted

---

[5] The Class Period extends from February 8, 2013 to the earlier of 150 days after full execution of the Settlement Agreement or entry of the preliminary approval order.

according to their job title (with the remaining 75% payable to the California Labor and Workforce Development Agency or "LWDA"), to settle the PAGA Settled Claims for the PAGA Settlement Period.[6] "PAGA Members," of which there are approximately 210, are defined as:

> All persons who are employed or have been employed by Defendant ADS in the State of California as truck drivers during the PAGA Settlement Period in the position of CA PTP, CA LTL, California Yard Drivers, California Shuttle Drivers and Non-CA Drivers where Defendant's records show that the Non-CA Driver made at least 1 trip into California during the PAGA Settlement Period.

Turley Decl. ¶ 41, Exh. 1 at ¶¶ 18, 19, 21, 29.

### c. Settlement Terms

Under the Agreement, ADS shall pay $850,000 (referred to as the "Gross Settlement Amount" or "GSA"). The GSA was arrived at considering the fact that ADS started paying PTP and LTL drivers hourly pay as of January 1, 2016, cutting off liability for the piece rate theory, and factoring in the workweeks worked by each type of driver, their form of compensation and the different theories advanced as to each. The GSA includes payments made to Settlement Class Members,[7] PAGA Members[8], Payment to the LWDA, Administration Fees and Costs, Attorneys' Fees and Costs, the Named Plaintiffs' Payments, and employer/employee payroll taxes on the portion of the settlement payments deemed wages. Turley Decl. ¶ 42, Exh. 1 at ¶ 12

#### i. Named Plaintiffs' Enhancement and General Release Payments

Subject to Court approval, Plaintiffs shall be paid an enhancement and general release payment not to exceed $10,000 ($20,000 total from the GSA) for their time and effort in bringing and presenting the action, and in exchange for a general release of all claims against ADS and other release parties as defined in the settlement. $5,000

---

[6] April 13, 2016 to the earlier of 150 days after full execution of the Settlement Agreement or entry of the preliminary approval order.

[7] Class Members who do not opt-out from the Settlement. Turley Decl., Exh. 1 at ¶ 27.

[8] In light of the binding nature of a PAGA judgment or settlement on non-party employees pursuant to *Arias v. Superior Ct. (Dairy)*, 46 Cal. 4th 969, and *Cardenas v. McLane Foodservice, Inc.*, 2011 WL 379413 at *3 (C.D. Cal. Jan. 31, 2011), PAGA Members (whether or not they are Settlement Class Members) shall receive their *pro rata* portion of the 25% of the PAGA Payment and will have been deemed to have fully released the PAGA Settled Claims.

of each $10,000 payment is allocated as a general release payment of each Named Plaintiffs' individual claims and the remaining $5,000 is allocated as an enhancement payment for acting as a class representative in litigation the Action and assuming the risks associated with this litigation. If the amount awarded is less than the amount requested, the difference shall become part of the NSA. Turley Decl. ¶ 43.

As representatives for absent Class Members, Plaintiffs risked a potential judgment taken against them for attorneys' fees and costs if this matter had not been successfully concluded. A losing party is liable for the prevailing party's costs. *See Early v. Superior Court*, 79 Cal.App.4th 1420, 1433 (2000). Though the fee agreements provide that Class Counsel would pay such costs, Plaintiffs would nevertheless have had a cost bill entered against them, leaving them ultimately liable for potentially hundreds of thousands of dollars in the unexpected possibility that Class Counsel did not meet their obligation to cover those costs. Turley Decl. ¶ 44. Judgments have been entered against class representatives.[9] The risk of payment of ADS's costs, alone, is a sufficient basis for an award of the requested enhancement. Few individuals are willing to take this risk, and the Class Representatives championed a cause on behalf of others with potentially huge monetary risks. In some wage and hour actions, such as this case, a losing party may also be liable for the prevailing party's attorney's fees. *See Labor Code* § 218.5.

Courts have regularly and routinely granted approval of settlements containing such enhancements. *See*, e.g., *Staton v. Boeing*, 327 F.3d 938, 977 (9th Cir. 2003). The typical enhancement award in wage and hour cases ranges from $5,000 to $75,000, although some awards may be higher. Very commonly there is more than one class representative who receive awards in the above range.[10]

---

[9] *See*, e.g. *Koehl v. Verio, Inc.*, 142 Cal.App.4th 1313, 1328 (2006) (a wage and hour class action where Defendant prevailed at trial, the named Plaintiffs were held liable, jointly and severally for the Defendant's attorneys' fees); *Whiteway v. Fedex Kinkos Office & Print Services, Inc.,* No. 05-2320, 2007 U.S. Dist. LEXIS 95398 (N.D. Cal. Dec. 17, 2007) (a wage and hour misclassification case lost on summary judgment, after the case was certified, the named Plaintiff was assessed costs in the sum of $56,788.).

[10] *See*, e.g., *Cook v. Niedert*, 142 F.3d 1004, 1015 (7th Cir. 1998); *Roberts v. Texaco*, 979 F. Supp. 185 (S.D.N.Y. 1997) ("present or past employee whose present position or employment credentials or recommendation may be at risk by reason of having prosecuted the suit, who therefore lends his or her name and efforts to the prosecution of

Additionally, the modern-day work force is mobile, with employees holding several jobs over the span of their career. Computer savvy prospective employers "Google" and/or do extensive background checks and have access to Court databases to see if applicants have ever filed a lawsuit or have ever been sued. Plaintiffs cost their former employer a substantial sum of money by their courage to step forward to vindicate not only their own rights but also, those of the similarly situated individuals, all of whom will now receive substantial payments due to the initiation of this action. Such conduct will not be lost on a prospective employer who has to choose between an applicant who has never sued an employer and one who has done so. The requested award far from compensates Plaintiffs for opportunities they may lose in the future because of the exercise of a Constitutional right to Petition the Courts for redress of a grievance. Moreover, the Named Plaintiffs' Enhancement and General Release Payments include consideration for a general release of Plaintiffs' individual claims against ADS – a release greater than Class Members give in exchange for a settlement payment with an express waiver of all benefits under California Civil Code § 1542.

### ii.  Attorneys' Fees and Costs

At final approval, Plaintiffs' Counsel will request an award of $212,506 (25% of the GSA) for attorneys' fees, subject to the Court's approval. This includes compensation for work remaining in documenting the settlement, securing final approval, ensuring the settlement is fairly administered, and obtaining dismissal of the action. Also, subject to Court approval, Plaintiffs' Counsel will request a reimbursement from the GSA for actual litigation costs in an amount not to exceed $30,000. If the amount awarded is less than the amount requested, the difference shall become part of the NSA and be available for distribution to Class Members. Turley Decl. ¶ 45.

---

litigation at some personal peril, a substantial enhancement award is justified"); *Thornton v. East Texas Motor Freight*, 497 F.2d 416, 420 (6th Cir. 1974) ("We also think there is something to be said for rewarding those drivers who protect and help to bring rights to a group of employees who have been the victims of discrimination.").

1.  The Anticipated Attorneys' Fee Request is Reasonable
    Under the "Common Fund/Percentage" Analysis

Courts have recognized that an appropriate method for awarding attorney's fees in class actions is to award a percentage of the "common fund" created as a result of the settlement. *Bell v. Farmers Ins. Exch.*, 115 Cal. App. 4th 715, 726, 765 (2004).[11]

*a.  The Common Fund Doctrine*

The purpose of the common fund/percentage approach is to "spread litigation costs proportionally among all the beneficiaries so that the active beneficiary does not bear the entire burden alone." *Vincent*, F.2d at 769. The California Supreme Court stated: "[O]ne who expends attorneys' fees in winning a suit which creates a fund from which others derive benefits may require those passive beneficiaries to bear a fair share of the litigation costs." *Quinn v. State of California*, 15 Cal.3d 162, 167 (1995). The California Supreme Court also recognized that the common fund doctrine has been applied "consistently in California when an action brought by one party creates a fund in which other persons are entitled to share." *City and County of San Francisco v. Sweet*, 12 Cal.4th 105, 110 (1995).

> The reasons for applying the common fund doctrine include:
> …fairness to the successful litigant, who might otherwise receive no benefit because his recovery might be consumed by the expenses; correlative prevention of an unfair advantage to the others who are entitled to share in the fund and who should bear their share of the burden of its recovery; encouragement of the attorney for the successful litigant, who will be more willing to undertake and diligently prosecute proper litigation for the protection or recovery of the fund if he is assured that he will be properly and directly compensated should his efforts be successful. *Id.*

In fact, the California Supreme Court agreed that using the percentage method has many advantages, "including relative ease of calculation, alignment of incentives between counsel and the class, a better approximation of market conditions in a

---

[11] In addition, section 216(b) provides that a court shall "in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). Courts in hybrid class and collective actions may utilize standards set forth for class actions. *See Millan v. Cascade Water Servs.*, No. 12-cv-01821, 2016 U.S. LEXIS 72198 *1, *28-*37 (E.D. Cal. June 2, 2016) (Analyzing attorneys' fees in hybrid class and collective action under standards set forth class actions.).

contingency case, and the encouragement it provides counsel to seek an early settlement and avoid unnecessarily prolonging the litigation." *Laffitte v. Robert Half Intern., Inc.* (2016) 1 Cal.5th 480, 503. The Court further supported the percentage method when it held that it "join[s] the overwhelming majority of federal and state courts in holding that when class action litigation establishes a monetary fund for the benefit of the class members, and the trial court in its equitable powers awards class counsel a fee out of that fund, the court may determine the amount of a reasonable fee by choosing an appropriate percentage of the fund created." *Id.*

The common fund approach continues to be a preferred method of awarding fees. Since *Serrano v. Priest*, 20 Cal.3d 25, 48 (1977) ("*Serrano III*"), there has been a "ground swell of support for mandating the percentage-of-the-fund approach in common fund cases." *Lealao v. Beneficial California, Inc.*, 82 Cal. App. 4th 19, 27 (2000). *Lealao* discusses at length the judicial perception of the lodestar method as unfair and arbitrary for fostering collusively low settlements for a high fee award and for placing the trial court in the unfavorable position of determining reasonable hours and billing rates. *Id.* at 29-30.

Class Counsel has undertaken representation at their own expense, with compensation contingent on providing a benefit to the class. Settlement Class Members will substantially benefit by the terms of the settlement. Because there is a defined and clearly traceable monetary benefit to the class, the Court can base an award of attorneys' fees on the class members' benefit, using a common fund approach. Class Counsel's request for 25% of the common fund is fair compensation for obtaining an excellent result for the Settlement Class Members and, in doing so, undertaking complex, risky, expensive, and time-consuming litigation purely on a contingent basis. Turley Decl. ¶ 46.

### b. The Percentage Requested is Reasonable

Regarding percentage fee awards, Newberg states: "[A]chievement of a substantial recovery with modest hours expended should not be penalized but should

be rewarded for considerations of time saved by superior services performed." *Id.* at §
14.01. The fees here were wholly contingent, and the case presented far more risk than
the usual contingent fee case. There was the prospect of the enormous cost inherent in
class action litigation, as well as a long battle with ADS who had retained
experienced, reputable legal counsel. That prospect has previously become reality, in
both trial courts and appellate courts in other wage and hour class litigation. Class
Counsel risked a great deal of time and a great deal of expense to ensure the
successful litigation of this action on behalf of all Class Members. Turley Decl. ¶ 47.

### c. The Fee Requested is Within the Range of Fees Approved in Comparable Cases

The requested fee of $212,506 is 25% of the GSA and is in line with the federal
"benchmark," which California has endorsed. *In Re Consumer Privacy Cases*, 175
Cal. App. 4th 545, 556 (2009). A review of class action settlements over the past ten
(10) years shows that courts have historically awarded fees in the range of 20% to
50%, depending on the circumstances of the case.[12] California Superior and District
Court judges have adopted the percentage method for determining fee awards in the
range of that requested by Class Counsel herein or even larger. As the fee requested
here is substantially less than the fees customarily awarded in California under the
common fund doctrine, it is respectfully requested the Court grant this request at final
approval. The reasonableness of the fee is further evidenced when cross-checked
against the Lodestar Method.

### 2. Fee Is Reasonable Per A Lodestar Cross-Check

---

[12] *Birch v. Office Depot*, S.D. Cal. 2007, USDC, Case No. 06 CV 1690 (Hon. Sabraw--awarding attorney's fees of 40% of $16,000,000 settlement in pre-certification meal/rest period class action); *Dirienzo v. Dunbar Armored, Inc.*, USDC Southern District, Case No. CV-09-2745 DMS JMA, (Hon. Sabraw – awarding fees of $500,000, 33-1/3% of $1,500,000 settlement in a pre-certification expense reimbursement, rest and meal period class action); *Mayville, et al. v. Kor Hotel Group, L.L.C., et al.*, USDC Central District, Case No.CV-04-8461 ABC (RCx) (Hon. Collins -- awarding fees of $480,000, 30% of $1,600,000 settlement in pre-certification meal and rest period class action); *Domino's Pizza Overtime Cases*, Orange County Superior Court Case No. JCCP 4498 (Hon. Andler -- awarding fees of $1,500,000, 30% of $5,000,000 settlement in pre-certification meal and rest period class action); *Green, et al. v. Penske Logistics, L.L.C., et al.*, USDC Southern District, Case No. CV-09-0069 DMS (CAB) (Hon. Sabraw – awarding fees of 33% of a $500,000 settlement in a pre-certification vacation policy class action).

Plaintiffs' Counsel's fee request is reasonable when calculated using the lodestar method. Under the lodestar method, a base fee amount is calculated from a compilation of time reasonably spent on the case and the reasonable hourly compensation of the attorney. *Serrano III*, at 48. The court then enhances this lodestar figure by a "multiplier" to account for a range of factors, such as the novelty and difficulty of the case, its contingent nature, and the degree of success achieved. *Id*., at 49; see also *Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1132-36; *PLCM Group, Inc. v. Drexler* (2000) 22 Cal. 4th 1084, 1096; *Thayer v. Wells Fargo Bank* (2001) 92 Cal.App.4th 819, 834, ["[t]here is no…rule limiting the factors that may justify an exercise of judicial discretion to [adjust the] lodestar"].

Plaintiffs' Counsel worked 414.3[13] hours on this case and has calculated the base lodestar at $246,631.75 at rates reflecting those currently earned in the market place. Turley Decl., **Exh. 3** (Summary of Time and Costs, Table 1 and Table 2). At final approval, Class Counsel will request attorney's fees in the amount of $212,506 (25% of the GSA). All of the work and tasks performed by Class Counsel were reasonable and necessary to the prosecution of this case and are reflected in the result achieved. Turley Decl. ¶ 20-21, 24-25, 27-28, 48; Blumenthal Decl. ¶4. As Class Counsel's lodestar fee is in excess of their fee request, a multiplier on their lodestar fee is not sought herein. In fact, the requested fee results in a so-called "negative multiplier" which suggests the percentage of the fund amount is reasonable and fair. See *Chun-Hoon v. McKee Foods Corp*., 716 F.Supp.2d 848, 854; *In re Portal Software, Inc. Securities Litigation*, 2007 U.S. Dist. LEXIS 88886, 2007 WL 4171201, at *16 (N.D. Cal. 2007).

*a. Counsel's Hourly Rates are Reasonable*

Plaintiffs' Counsel's hourly rates are between $395 and $875 and are in line with rates approved for wage and hour class action attorneys in this jurisdiction. A reasonable hourly rate is the prevailing rate charged by attorneys of similar skill and

---

[13] This time includes anticipated time necessary to take the case through final approval and the settlement administration process.

experience in the relevant community. *PLCM Group, Inc. v. Drexler*, at 1095. When determining a reasonable hourly rate, courts may consider factors such as the attorney's skill and experience, the nature of the work performed, the relevant area of expertise, and the attorney's customary billing rates. *Flannery v. California Highway Patrol*, 61 Cal. App. 4th 629, 632 (1998). Plaintiffs' Counsel's skill and experience support their hourly rates. Furthermore, other wage and hour attorneys working as class counsel before California courts charge comparable, if not higher, rates. *See* Turley Decl. **Exh. 4** (copy of Westlaw Court Express's Legal Billing Report, Volume 14, Number 3, California Region for December 2012); **Exh. 5** (2012 National Law Journal survey of hourly billing rates for Partners and Associates); **Exh. 6** (2014 Richard Pearl Declaration in *Hohnbaum v. Brinker Restaurant Corp.* SDSC GIC834348).

### b. Counsel's Total Hours are Reasonable

In determining a lodestar, reasonable hours include, in addition to time spent during litigation, the time spent before the action is filed, including time spent interviewing the clients, investigating the facts and the law, and preparing the initial pleadings. *See New York Gaslight Club, Inc. v. Carey*, 447 U.S. 54, 62 (1980). Further, the fee award should include fees incurred to establish and defend the attorneys' fee claim. *Serrano v. Priest*, 32 Cal.3d 621, 639 (1982) ("*Serrano IV*"). Plaintiffs' Counsel has worked a total of 414.3 hours on this case. Turley Decl. ¶ 20-21, 24-25, 27-28, Exh. 1; Blumenthal Decl. ¶4. The work performed by Plaintiffs' Counsel in order to achieve a settlement that will provide valuable consideration to the Class and will be detailed in Plaintiffs' final approval motion.

### iii. Settlement Administration Costs

The Parties have agreed to the appointment of ILYM Group, Inc. (referred to herein as "ILYM") as the settlement administrator. ILYM has provided an estimate for its expenses that does not exceed the Settlement Agreement's allotted $15,000 to administer this settlement. The $15,000 allotment in the Settlement Agreement allows

for any unexpected additional charges that may arise to accomplish the settlement administration process. If ILYM's expenses or the amount awarded is less than the amount allotted, the difference shall become part of the NSA and be available for distribution to Class Members. Turley Decl. ¶ 49, Exh. ¶¶ 25, 39(c).

### iv. Settlement Payments to PAGA Members

From the GSA, ADS will make a $10,000 PAGA Payment. PAGA Members (class members who worked for ADS during the PAGA Settlement Period) will receive an additional payment for PAGA penalties. PAGA Members – i.e. those class members who would be considered aggrieved employees within the statutory period - will receive a pro-rata share of 25% of the PAGA Payment (or $2,500) remainder of the PAGA Payment, as weighted by the percentages for their job titles – the same calculation discussed above. The LWDA will receive 75% (or $7,500) of the PAGA Payment. Turley Decl. ¶ 50, Exh. ¶¶ 14, 19, 29.

### v. Calculation of Settlement Payments to Settlement Class Members

The GSA was arrived at with reference to the fact that ADS began paying CA PTP and CA LTL drivers hourly pay in addition to piece rate pay as of January 2016. After all deductions have been made from the GSA, an estimated NSA of $562,494, remains distributable to Settlement Class Members. Each Class Member's individual workweeks will be weighed according to the job title they held, as follows:

- CA PTP drivers shall be weighted at 100% - i.e. 1 workweek worked in this position will equal 1 workweek. This weighting reflects the fact that Plaintiffs contended that the piece rate pay received by CA PTP drivers failed to compensate them for their rest breaks and various non-driving tasks.
- CA LTL drivers shall be weighted at 75% - i.e. 1 workweek worked in this position will equal ¾ of a workweek. This weighting reflects the fact that CA LTL drivers were paid day pay, not piece rate pay, and as a result, Plaintiffs could not rely on the piece rate theory to support their claims for unpaid wages.
- Non-CA drivers shall be weighted at 50% - i.e. 1 workweek worked in this position will equal ½ of a workweek in which ADS's records show that the Non-CA driver made at least one trip into California. This weighting reflects the fact that while the piece rate theory applies to these drivers, they rarely

spent more than a few days in California in any workweek in which they drove into California, and thus they are being credited with only 1/2 of such workweeks.

• CA Yard or Shuttle drivers shall be weighted at 25% - i.e. ¼ workweek worked in this position will be ¼ of a workweek. This weighting reflects the fact that CA Yard and Shuttle drivers were hourly paid, and Plaintiffs could not rely on a piece rate theory to advance their claim for rest period violations.

ILYM will calculate the individual settlement payments by multiplying the individual Class Member's Workweeks Worked during the Class Period and as weighed by job title (discussed above), multiplied by the Workweek Rate. ILYM will calculate the Workweek Rate by dividing the NSA by the total of all Workweeks Worked by all Settlement Class Members (after being weighted by job title). Therefore, the amount of each Settlement Class Member's settlement payment is tied to the number of Workweeks Worked by the individual Class Member for ADS in California during the Class Period in comparison to all of the Class Members Workweeks Worked. Turley Decl. ¶ 51, Exh. 1 ¶ 29.

vi.   Distribution of Funds and Uncashed Checks

Subject to the Court finally approving the settlement, and provided that there are no objections or appeals to the Court's Final Approval Order and Judgment, ADS will remit the GSA to ILYM within 21 calendar days after the Effective Date.[14] 10 days after receipt of the GSA from ADS, ILYM will distribute all payments required under the Settlement Agreement. Settlement Class Members and PAGA Members shall have 180 calendar days after the checks are mailed to cash them. Any uncashed or undeliverable checks will be sent to the California Unclaimed Wages Fund in the Class Member's name. Turley Decl. ¶ 52, Exh. 1 ¶ 28, 49.

**d.   Release of Claims by Settlement Class Members**

---

[14] If no objections are filed (or are withdrawn prior to Final Approval), the Effective Date is the date of Final Approval. If objections are not withdrawn prior to Final Approval, then the Effective Date is 15 days after the expiration of the appeals period, if no appeal is taken. If objections are filed and an appeal is filed, the Effective Date is 15 days after (1) the judgment is affirmed by an appellate court with no possibility of further appeals or the date the appeal is dismissed with no possibility of further appeals or, if remanded, the date the District Court enters final judgment and time for an appeal expires. For further detail, see Turley Decl. Exh. 1, ¶ 7.

In exchange for a settlement payment, Class Members are informed they will release the following claims:

> Any and all claims for relief that occurred during the Class Period, whether suspected or unsuspected, which Plaintiffs or any Settlement Class Member (except those who opt out) have had, now have, or may discover in the future against the Released Parties or any of them for any or all claims alleged in the original complaints and/or Consolidated Complaint or which could have been alleged in the Consolidated Complaint based on the allegations, facts, matters, transactions or occurrences alleged therein, and shall specifically include without limiting the generality thereof all causes of action listed in the Consolidated Complaint, including: violation of minimum wage laws and straight time wages, violation of Labor Code sections 510 and 1194 (overtime wages), violation of Labor Code sections 226.7 and 512 (meal and rest periods), violation of Labor Code section 226 (record keeping and wage statements), violation of Labor Code sections 201-203 (waiting time penalties), PAGA Settled Claims, and violation of Business & Professions Code section 17200, *et seq.* (Unfair Business Practices and Unfair Competition), including violations alleged in the Complaint. The release of the foregoing claims, extends to all theories of relief regardless of whether the claim is, was or could have been alleged as separate claims, causes of action, lawsuits or based on other theories of relief, whether under California law, federal law, state law or common law (including, without limitation, as violations of the California Labor Code, the Wage Orders, applicable regulations, California's Business and Professions Code section 17200) and any and all claims under the Fair Labor Standards Act ("FLSA") (consenting to join for purposes of the FLSA to be effectuated by negotiating the settlement check(s) as explained in the Class Notice and notation on the settlement check(s)). "Settled Claims" includes all types of relief available for the above-referenced claims, including any claims for damages, restitution, losses, penalties, fines, liens, attorneys' fees, costs, expenses, debts, interest, injunctive relief, declaratory relief, or liquidated damages. "Settled Claims" expressly *excludes* all other claims, including claims for wrongful termination, unemployment insurance, disability, and workers' compensation, and claims outside of either Class Period. Settled Claims also includes an express waiver of all benefits under section 1542 of the California Civil Code as to the Settled Claims *only*, as well as under any other federal or state statutes or common law principles of similar effect.

See Turley Decl. Exh. 1, ¶ 26. The Class Period extends from February 8, 2013 to the earlier of 150 days after full execution of the Settlement Agreement or entry of the preliminary approval order. *Id.* at ¶ 5. In exchange for a pro-rata share of the PAGA Payment, PAGA Members are informed they will release the following claims:

> All claims, causes of action, damages, wages, benefits, expenses, penalties, debts, rights, demands, liabilities, obligations, attorneys' fees, costs, and any other form of relief or remedy in law, equity, or whatever kind or nature, whether known or unknown, suspected or unsuspected sought pursuant to the PAGA that occurred at any time during the PAGA Settlement Period[15] and that is predicated upon any Labor Code violations of the PAGA alleged in the Consolidated Complaint in the Action, including, but not limited to: violation of minimum wage laws and straight time wages, violation of Labor Code sections 510 and 1194 (overtime wages), violation of Labor Code sections 226.7 and 512 (meal and rest periods), violation of Labor Code section 226 (record keeping and wage statements), violation of Labor Code sections 201-203 (waiting time penalties).

See Turley Decl. Exh. 1, ¶ 20. These claims were alleged in the Consolidated Complaint and are tied to the allegations contained therein. *Id.* at ¶ 21.

## IV.    THE CLASS SHOULD BE CONDITIONALLY CERTIFIED

A class action may be certified under if all four prerequisites under Rule 23(a) are satisfied and at least one subsection under Rule 23(b) is met. *Doninger v. Pac. Nw. Bell, Inc.*, 564 F.2d 1304 (9th Cir. 1977). The requirements of Rule 23(a) are referred to as: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy. *United Steel, Paper & Forestry, Rubber, Mfg. Energy v. Conoco Phillips Co.*, 593 F.3d 802, 806 (9th Cir. 2010). As will be discussed below, these requirements are met here for purposes of settlement. In addition, the Parties agree to certification of the Class under Rule 23(b)(3) which has the added requirement of "predominance." *Id.* ADS does not oppose certification for the purpose of settlement only and the Parties seek provisional certification of the Class.

### a. Rule 23(a) Requirements are Met for the Class
#### i. Numerosity

---

[15] April 13, 2016 to the earlier of 150 days after full execution of the Agreement or entry of preliminary approval.

Rule 23(a)(1) is typically referred to as "numerosity" in that it requires a class that is "so numerous that joinder of all members is impracticable." The term "impracticable" does not mean "impossible," and only refers to "the difficulty or inconvenience of joining all members of the class." *Advertising Specialty Nat'l Asso. v. Federal Trade Com.*, 238 F.2d 108, 119 (1st Cir. 1956). Here, there are approximately 255 Class Members and it would not be practical to join so many parties to the lawsuit. Therefore, the numerosity requirement is satisfied.

## ii. Commonality

Rule 23(a) requires that "there are questions of law or fact common to the class." However, "all questions of fact and law need not be common to satisfy the rule…[and] [t]he existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class. *Hanlon v. Chrysler Corp.*, 150 F. 3d 1011, 1019 (9th Cir. 1998). The Ninth Circuit has held that commonality exists "where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001). Here, common questions exist, such as whether ADS's uniform policies deprived the Class of compliant meal and rest periods and whether ADS's piece-rate pay structure pays for all time worked. Courts in the Ninth Circuit have found this sufficient to show commonality.[16] Turley Decl. ¶ 53.

## iii. Typicality

Rule 23(a) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." This requirement is "permissive" and requires only that the representative's claims are reasonably related to those of the absent class members. *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010). Plaintiffs' claims and the Class are based on the same alleged course of conduct, i.e.,

---

[16] *See Dilts v. Penske Logistics, LLC,* 267 F.R.D. 625, 633 (S.D. Cal. 2010); *Ching v. Siemens Industry, Inc.*, 2013 U.S. Dist. LEXIS 169279, *4 (N.D. Cal. 2013); *Vanwagoner v. Siemens Industry, Inc.*, 2014 U.S. Dist. LEXIS 67141, *11 (N.D. Cal. 2014).

the claim that ADS does not provide compliant meal and rest periods and that its piece-rate pay structure does not pay for all time worked. Plaintiffs and the Class are also alleged to have suffered similar injury, i.e., the non-payment of premiums for allegedly unprovided or non-duty-free meal and rest periods. Turley Decl. ¶ 54.

        iv.  Adequacy

The proposed Class Representatives and their counsel have and will continue to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy requirement has two prongs, the first being "that the representative party's attorney be qualified, experienced, and generally able to conduct the litigation." *In re Surebeam Corp. Secs. Litig.*, 2004 WL 5159061, *5 (S.D. Cal. 2004). In this case, Plaintiffs' Counsel meet this standard and have been appointed class counsel in numerous class actions. *See* Turley Decl. ¶¶ 1-18, 22-23, 26; Blumenthal Decl. ¶2.

The second prong of the adequacy test is "that the suit not be collusive and plaintiff's interests not be antagonistic to those of the remainder of the class." *Id.* at *1-2. Here, there is no evidence of antagonism between the Class Representatives' interests and those of the Class. The Class Representatives have litigated this case in good faith and the interests of the Class Representatives are aligned with those of the Class as they all share a common interest in challenging the legality of the alleged policies and procedures on which the claims are based. There is also no evidence of any collusion between the Parties. Plaintiffs' counsel negotiated with ADS to pay $850,000 to settle and counsel was only able to negotiate this sum after extensive exchange and analysis of information and data. These reasons compel that Plaintiffs should be appointed as Class Representatives. ADS does not oppose appointment of Plaintiffs as Class Representatives for settlement purposes. At Final Approval, Plaintiffs' Counsel will request an enhancement to compensate the Class Representatives for their efforts in prosecuting this matter, and for the risks and stigma they now face for doing so. Turley Decl. ¶ 55; generally, Atchison Decl. and Blair Decl.

### b. **The Rule 23(b) Standards Are Satisfied**
#### i. Common Issues Predominate

In addition to the Rule 23(a) requirements, a court must find that common issues of law or fact "predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). With regard to the requirements of subsection (b), Rule 23(b)(3) allows class certification where common questions of law and fact predominate over individual questions and class treatment is superior to individual litigation. The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997). To determine whether common questions predominate, a court is to consider "the relationship between the common and individual issues." The proposed Class is sufficiently cohesive to warrant adjudication by representation. Furthermore, because the "predominance" factor concerns liability, any variation in damages is insufficient to defeat class certification. *Leyva v. Medline Indus.*, 716 F.3d 510, 514 (9th Cir. 2013). Plaintiffs contend all claims in this litigation are based on allegedly common, class-wide policies and procedures, and that liability could be determined on a class-wide basis. *Brinker Restaurant Corp. v. Superior Court*, 53 Cal.4th 1004, 1033 (2012). As noted above, the major issues of whether ADS provided compensation for all time worked and legally compliant meal and rest periods to Plaintiffs and the Class stem from what Plaintiffs claim are uniform policies.

#### ii. The Class Action Device Is Superior

The class action device is "superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). Certification of the Class will allow Class Members' claims to be fairly, adequately, and efficiently resolved to a degree that no other mechanism would provide. Alternative methods of resolution would be individual claims for relatively small amount of damages. *Hanlon*, 150 F. 3d at 1019-20. These claims "would prove uneconomic for potential plaintiffs' because 'litigation costs would dwarf potential recovery.'" *Id.* at 1023.

### iii.  No Manageability Issues Preclude Certification

Finally, no issues of manageability preclude certification. A court faced with a request for a settlement-only class need not inquire whether the case would present intractable problems of trial management, even though other requirements under Rule 23 must still be satisfied. *See, e.g., Lazarin v. Pro Unlimited, Inc.*, 2013 WL 3541217, *5 (N.D. Cal. 2013). Nevertheless, as discussed herein, the proposed plan of distribution and settlement process are efficient and manageable.

### c.  **Plaintiffs' Counsel Should be Appointed as "Class Counsel"**

Rule 23(g) requires that courts consider the following four factors when appointing settlement class counsel: (1) whether counsel has investigated the class claims; (2) whether counsel is experienced in handling class actions and complex litigation; (3) whether counsel is knowledgeable regarding the applicable law; and (4) whether counsel will commit adequate resources to representing the class. *See Grant v. Capital Mgmt. Servs., L.P.*, 2013 WL 6499698, *2-3 (S.D. Cal. 2013). It is clear from the record presented herein that Plaintiffs' Counsel should be appointed Class Counsel. Plaintiffs' Counsel is highly experienced and knowledgeable regarding complex wage and hour class actions like this one. Turley Decl. ¶¶ 1-18, 22-23, 26; Blumenthal Decl. ¶2. Indeed, Plaintiffs' counsel from The Turley & Mara Law Firm, APLC, was class counsel in *Hohnbaum et al. v. Brinker Restaurant Corp et al.*, which is the subject case in the landmark decision of *Brinker Restaurant Corp. v. Superior Court*, 53 Cal.4th 1004 (2012). Turley Decl. ¶ 13. Plaintiffs' counsel have prosecuted numerous cases on behalf of employees for California Labor Code violations and thus are experienced and qualified to evaluate the class claims and to evaluate settlement versus trial on a fully informed basis, and to evaluate the viability of the defenses. Turley Decl. ¶ 14; Blumenthal Decl. ¶2. In sum, Plaintiffs' Counsel are fully committed to representing the class in this case, have the skill and expertise to do it properly, and will continue to do so whether or not the Settlement is approved. Accordingly, appointment of William Turley, David Mara, and Jamie Serb of The

Turley & Mara Law Firm, APLC, and Norman B. Blumenthal, Kyle R. Nordrehaug, and Aparajit Bhowmik of Blumenthal, Nordrehaug & Bhowmik LLP as Class Counsel is appropriate.

## V.     THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED
### a.  <u>Federal Rule of Civil Procedure, Rule 23(e)</u>

Rule 23(e) provides that any compromise of a class action must receive court approval. The court has broad discretion to grant approval and should do so where the proposed settlement is "fair, adequate, reasonable, and not a product of collusion." *Hanlon*, 150 F.3d at 1026. In deciding whether a settlement should be approved, the Ninth Circuit has a "strong judicial policy that favors settlement, particularly where complex class action litigation is concerned." *In re Heritage Bond Litigation*, 2005 WL 1594403 (C.D. Cal. 2005). At the preliminary approval stage, the Court need only "determine whether the proposed settlement is within the range of possible approval." *Gatreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982). A class action settlement should be approved if "it is fundamentally fair, adequate and reasonable." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

Although at preliminary approval, the Court need not engage in the rigorous analysis required for final approval (*see Manual for Complex Litigation*, Fourth, § 22.661 at 438 (2004)), the ultimate fairness determination will include balancing several factors, including:

> the strength of plaintiffs' case; the risk, expense, complexity and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the Class Members to the proposed settlement. *Officers for Justice*, *supra*, 688 F.2d 615, 625.

Not all of the above factors apply to every class action settlement, and one factor alone may prove determinative in finding sufficient grounds for court approval. *Nat'l Rural Telecommunication Cooperative v. Directv, Inc.*, 221 F.R.D. 523, 525-26 (C.D.

Cal. 2004). Courts have wide discretion in assessing the weight and applicability of each factor. *Id.*

### b. The Settlement Resulted from Arm's-Length Negotiations

The Ninth Circuit has shown longstanding support of settlements reached through arms' length negotiation by capable opponents. In *Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009), the Ninth circuit expressly opined that courts should defer to the "private consensual decision of the [settling] Parties." *Id.* at 965, citing *Hanlon*, 150 F.3d at 1027. The proposed settlement here is the product of arm's-length negotiations facilitated by Mark Rudy, one of the most respected mediators in wage and hour class actions. Turley Decl. ¶ 56.

### c. The Balancing of the Factors

The factors noted above are commonly considered at preliminary approval. The factors here, in their respective levels of applicability, favor approval of the settlement. Plaintiffs submit, and ADS disputes, that this case was factually and legally strong. This matter was settled after substantial discovery, resulting in the production of documents and data that provided Plaintiffs with the understanding of the strengths and potential weaknesses of their case. Thus, at the point the settlement was initially agreed to, no one was in a better position than Plaintiffs' Counsel to understand the strengths and potential limitations of Plaintiff's case and thus evaluate the reasonableness of the amount offered in settlement. Turley Decl. ¶ 57.

Plaintiffs claim that ADS's piece-rate pay structures do not separately compensate drivers for all non-driving work performed (i.e. drop and hook, fueling, paperwork, pre- and post-trips)[17] at the statutory minimum, or agreed upon rate. Plaintiffs contend - and ADS denies – that ADS violates California law by not separately paying piece-rate drivers for non-driving work.[18] ADS vigorously contests

---

[17] Based on conversations Plaintiffs' Counsel have conducted with Plaintiffs and Class Members, the non-driving time adds up to approximately 4 hours per week.

[18] Plaintiffs base this contention on the following cases, which Plaintiffs contend stands for the proposition that a piece-rate compensation pay system that does not separately compensate for all time worked does not comply with California minimum wage law: *Cardenas v. McLane Foodservices, Inc.* (C.D. Cal. 2011) 796 F.Supp.2d 1246, 1252; See also, *Gonzalez v. Downtown LA Motors, LP* (2013) 215 Cal.App.4th 36, 49; *Armenta v. Osmose, Inc.*

Plaintiffs' position and contends the pay is intended to compensate drivers for all of the work they perform for ADS in delivering the loads, not just the time they spend driving. ADS therefore contends that their piece-rate pay structure does compensate drivers for all hours worked and that they strictly comply with California labor laws. ADS also contends that each driver would have to be polled to determine how long they spent on each activity, resulting in individualized issues predominating. As a result, ADS contends the case would not be amenable to generating common answers under *Dukes v. Wal-Mart Stores, Inc.* (2011) 131 S.Ct. 2541. ADS contends the claim would not be amenable to certification and, if so, certification would be likely not be maintained throughout litigation. If Plaintiffs were successful with this claim, Plaintiffs calculate ADS's maximum exposure at $442,759.[19] Plaintiffs also argue that they would also be entitled to damages for waiting time penalties[20] and wage statement violations,[21] which Plaintiffs calculate ADS's maximum exposure at $819,815.70. Turley Decl. ¶ 58.

In addition, Plaintiffs' rest period claim is based on Plaintiffs' interpretation that ADS's piece-rate pay structures uniformly do not provide for paid rest periods in accordance with IWC Wage Order 9-2001, section 12(A) and *Bluford v. Safeway, Inc.* (2013) 216 Cal.App.4th 872. Plaintiffs claim that this violates California Labor Code §226.7 and entitles Plaintiffs and the Class to an hours' worth of pay each workday. ADS also vigorously contests this claim, contending that it's piece-rate pay structure does, in fact, compensate for rest periods – as compensation for rest periods is built and factored into the piece rate. ADS also defends that any potential liability under this cause of action cuts off beginning January 1, 2016, when ADS complied with the requirements under Labor Code § 226.2 – which required ADS to separately pay for

---

(2005) 135 Cal.App.4th 314, 320; *Reinhardt v. Gemini Motor Transport* (E.D. Cal.2012) 869 F.Supp.2d 1158, 1168.

[19] 3,921 eligible piece-rate workweeks x 4 hours non-driving time per week =15,684 x $28.23 average hourly rate = $442,759

[20] $28.23 average hourly rate x 10.32 average shift length = $291.33 daily wage x 30 days = $8,739.90 x 43 eligible former employees = $375,815.70

[21] 111 eligible employees in statutory period x $4,000 maximum recovery = $444,000

rest periods. If Plaintiffs succeeded with this claim, they calculate ADS's maximum exposure at $553,449.15.[22] Turley Decl. ¶ 59.

Plaintiffs also contend that, per ADS's uniform meal period policies, ADS does not provide meal periods in the timeframes California law requires. ADS contends it has an elaborate and documented policy and practice of ensuring Plaintiffs and the Class have the opportunity to take meal periods. Plaintiffs' claim ADS's policy only provides for when a shift qualifies for a meal period – i.e. employees are eligible for a first meal period if they work more than five hours in a day and a second meal period if they work over 10 hours in a day. Plaintiffs' claim this violates California law because it does not inform employees that they should take their first meal period before the end of the fifth hour and their second meal period before the end of the tenth hour. ADS argues that it complies with California law and that they take their meal periods within compliant times and understand ADS's policy requires that they take first and second meal breaks prior to the end of the fifth and tenth hours. As this claim applies to both hourly and piece-rate drivers, ADS further argues Plaintiffs – who were paid on a piece-rate - would not be adequate class representatives for hourly paid drivers. If successful on their claim, Plaintiffs calculate ADS's maximum exposure for premiums under Labor Code § 226.7 for one meal period per shift at $3,003,107.40.[23] Turley Decl. ¶ 60. As discussed, the success of Plaintiffs case largely hinges on whether they are successful in proving, under ADS's uniform policies, that they and all Class Members paid on a piece-rate basis did not receive paid rest periods, were not paid for all time worked under the piece-rate pay structure, and that Plaintiffs and all Class Members did not receive timely meal periods. Turley Decl. ¶ 61.

### d. Range of Exposure and Reasonable Discount

If Plaintiffs succeeded in establishing all of their claims, the total maximum exposure could be $4,819,131.25. In light of the defenses discussed above, and in

---

[22] 3,921 eligible workweeks x 5 days = 19,605 shifts x $28.23 average hourly wage = $553,449.15

[23] 21,276 eligible workweeks x 5 = 106,380 shifts x $28.23 average hourly wage = $3,003,107.40

considering the best interests of the class, Plaintiffs had to discount their exposure analysis. In doing so, Plaintiffs considered the risks of not achieving certification under Rule 23 and the realistic potential of recovering under each of their theories. For example, Plaintiffs considered that approximately 40% of the Class consists of Non-California drivers, with only 2% of their total workweeks spent in California, which would require them to prove that their claimed violations of California law occurred during that small time frame that the Non-California drivers spent in California. Plaintiffs also considered ADS's defense that, under *Brinker*, ADS need not ensure meal and rest periods are taken but is only obligated to make them available to its employees. ADS argues the case would devolve into individualized issues, as each driver would need to answer why they chose to take their break at the time it was taken. ADS contends its meal and rest period policies were not unlawful, because it did not have (and Plaintiffs cannot prove) a policy whereby ADS refused to allow Plaintiffs and the Class to take meal and rest periods at compliant times. ADS contends its meal and rest period policies comported with the flexibility the *Brinker* court held was integral to California's meal and rest period requirements. Further, Plaintiffs had to consider the reasonable likelihood that they would be unable to prove the total amount of harm at trial, assuming Plaintiffs achieved class certification on all causes of action. Although Plaintiff believes the case is suitable for certification on the claimed basis that there are company-wide policies that Plaintiff contends violate California law and uniformly affect Class Members; uncertainties with respect to certification and winning on the merits are always present. Turley Decl. ¶ 62.

Courts in the Ninth Circuit have observed that "a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery." *Telecomm. Corp. v. DirectTV*, 221 F.R.D. 523, 527 (C.D. Cal. 2004). The settlement here is fair, adequate, and reasonable when considering that it provides a definite and significant recovery in light of the risks of further litigation. In light of the strength of Plaintiffs' case, the risks of further litigation, ADS's defenses, and the estimated

values of Plaintiffs' claims at trial, the settlement amount of $850,000 is fair and reasonable.

## VI.        NATURE AND METHOD OF NOTICE

Rule 23(c)(2) requires that the notice inform prospective class members of: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through counsel if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on class members under Rule 23(c)(3).

"Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." Newberg, 2 *Newberg on Class Actions* §8.32 at 8-103. The proposed Notice meets all of these requirements. See Turley Decl., **Exh. 2**. Within 15 calendar days after entry of the preliminary approval order, ADS will provide ILYM with the Class data, including the names, last known addresses, Social Security numbers, and dates employees worked in a covered position for ADS during the Class Period. Within 15 days after receipt of the Class data and after conducting a National Change of Address search to verify each Class Members' address, ILYM will mail the Notice to the Class via U.S. Mail. The Class will have 45 days from the postmark date of the Notice to opt-out, object, or dispute the workweek data. Class Members do not have to do anything to receive their portion of the settlement. Turley Decl. ¶ 63, Exh. 1 ¶ 43.

## VII.        CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that the Court grant preliminary approval of the proposed settlement, conditionally certify the Class, appoint Plaintiffs as Class Representatives, approve Plaintiffs' Counsel as Class Counsel, approve ILYM as Settlement Administrator, enter the proposed Preliminary Approval Order submitted herewith, and set a Final Approval Hearing.

Dated: March 26, 2018                 **THE TURLEY & MARA LAW FIRM, APLC**

By:/s/ *Jamie Serb*

Attorneys for Plaintiffs