David Mara, Esq. (230498)
dmara@maralawfirm.com
Jamie Serb, Esq. (289601)
jserb@maralawfirm.com
**MARA LAW FIRM, PC**
2650 Camino Del Rio North, Suite 205
San Diego, California 92108
Telephone: (619) 234-2833
Facsimile: (619) 234-4048
Attorneys for Plaintiffs
[*Additional Counsel on Next Page*]

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ALAN ATCHISON, on behalf of himself, all others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>ASHLEY FURNITURE INDUSTRIES, INC., and DOES 1 through 100, inclusive,<br><br>        Defendants.<br>_____<br>JAMES BLAIR, on behalf of himself and all others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>ASHLEY DISTRIBUTION SERVICES, INC., and DOES 1 through 50 inclusive,<br><br>        Defendants.<br>_____ | Lead Case No. ED CV17-00528 JAK (SPx *Consolidated with* Case No. ED CV17-01427 JAK (SPx)<br><br>**UNOPPOSED**<br><br>**CLASS ACTION**<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, AWARD OF ATTORNEYS' FEES, COSTS, CLASS REPRESENTATIVE ENHANCEMENT/GENERAL RELEASE PAYMENTS, SETTLEMENT ADMINISTRATION EXPENSES; AND ENTERING JUDGMENT**<br><br>Date: June 24, 2019<br>Time: 8:30 a.m.<br>Judge: Hon. John A. Kronstadt<br>Ctrm: 10B<br><br>*Atchison* Action Filed:   February 8, 2017<br>*Blair* Action Filed:   April 13, 2017<br>Trial Date:   None Set |

**BLUMENTHAL NORDREHAUG BHOWMIK DE BLOUW LLP**
Norman B. Blumenthal (SBN 068687)
Kyle R. Nordrehaug (SBN 205975)
Aparajit Bhowmik (SBN 248066)
2255 Calle Clara
La Jolla, CA 92037
Telephone: (858) 551-1223
Facsimile: (858) 551-1232

Attorneys for Plaintiffs

**TO:  ALL PARTIES HEREIN AND TO THEIR COUNSEL OF RECORD**

PLEASE TAKE NOTICE that Plaintiffs, Alan Atchison and James Blair (hereinafter "Plaintiffs"), moves this Court for an order:  (1) certifying the Settlement Class for settlement purposes only; (2) confirming Plaintiffs Alan Atchison and James Blair as the Class Representatives for the Settlement Class and granting their requested Enhancement and General Release Payments; (3) confirming David Mara and Jamie Serb of Mara Law Firm, PC and Norman B. Blumenthal, Kyle R. Nordrehaug, and Aparajit Bhowmik of Blumenthal Nordrehaug Bhowmik De Blouw LLP as Class Counsel for the Settlement Class and granting their requested attorneys' fees and litigation costs; (4) finally approving the settlement embodied in the Class Action Settlement Agreement and Stipulation; (5) confirming ILYM Group, Inc. as the Settlement Administrator and granting it the requested fee for its services as Settlement Administrator; and (7) entering judgment.

This motion is set for determination on June 24, 2019, at 8:30 a.m. in Courtroom No. 10B in the First Street Courthouse located at 350 W. First Street, Los Angeles, California 90012. This motion is based upon this notice, the accompanying Memorandum of Points & Authorities filed herewith, the accompanying Declarations of David Mara and Kyle Nordrehaug filed herewith, the accompanying Declarations of Plaintiffs Alan Atchison and James Blair filed herewith, the Class Action Settlement Agreement and Stipulation and all exhibits thereto, the filings on record in this case, and upon such further evidence, both documentary and oral, that may be presented at the hearing of this motion.

Dated: May 24, 2019

**MARA LAW FIRM, PC**
**BLUMENTHAL NORDREHAUG BHOWMIK DE BLOUW LLP**

By:/s/ *Jamie Serb*
    JAMIE SERB
    Attorneys for Plaintiffs

# **TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................................ 1

II.   FACTUAL AND PROCEDURAL BACKGROUND ............................. 2

    a.    Investigation ...................................................................................... 3

    b.    Settlement Negotiations ................................................................... 3

III.  SUMMARY OF SETTLEMENT .......................................................... 4

    a.    The Proposed Class ......................................................................... 4

    b.    PAGA Members ................................................................................ 4

    c.    Settlement Terms .............................................................................. 5

    d.    Release of Claims ............................................................................. 7

IV.   THE SETTLEMENT NOTICE PROCESS WAS SUCCESSFUL ................... 8

    a.    Dissemination Of The Class Notice ............................................... 8

    b.    No Objections And Only One Request For Exclusion Was Received .............. 9

    c.    Challenges To Employment History ............................................... 9

V.    DISCUSSION .................................................................................... 9

    a.    The Settlement Meets The Standards Governing Final Approval ............. 9

        i.    *The Settlement Was A Result Of Arm's Length Negotiations* ................. 10

        ii.   *In re Bluetooth Headset Products Liability Litigation Factors Are Not Present Here* ..................................................................... 11

        iii.  *The Settlement Is Fair* ............................................................ 12

    b.    Sufficient Discovery and Investigation Has Occurred ................... 13

    c.    Class Counsel Have Extensive Experience Acting As Class Counsel ............. 14

    d.    The Class Members' Response To The Settlement Is Further Evidence That The Settlement Is Fair And Reasonable ................................. 14

    e.    The Court Should Approve The Requested Attorneys' Fees And Costs, Class Representative Enhancement/General Release Payments, And Settlement Administration Fees ....................................................... 14

        i.    *The Attorneys' Fee Request Is Reasonable Under The "Common Fund/Percentage" Analysis* ................................................... 14

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR          Case No ED CV17-00528
FINAL APPROVAL OF CLASS ACTION SETTLEMENT          *Consolidated with:* Case No. 17-01427

– i –

1.    The Common Fund Doctrine ..................................................... 15

2.    The Percentage Requested Is Reasonable ............................... 16

3.    The Fee Requested Is Within The Range Of Fees Approved In Comparable Cases .......................................................................... 17

4.    A Lodestar Cross-Check With A Modest Multiplier Confirms the Reasonableness Of The Requested Fee .......................................... 18

ii.    *Counsel's Hourly Rates Are Reasonable* ..................................... 18

iii.    *Counsel's Total Hours Are Reasonable* ..................................... 19

iv.    *The Costs of Litigation Were Reasonable And Should Be Approved* .......... 19

v.    *The Requested Class Representative Enhancement/General Release Payments Are Reasonable* .................................................................. 20

vi.    *The Court Should Approve The Settlement Administration Fee* ................. 22

vii.    *The Court Should Approve The PAGA Payment To The LWDA* ................. 22

VI.    CONCLUSION ................................................................. 23

# **TABLE OF AUTHORITIES**

## CASES

*Albrecht v. Rite-Aid,*

    San Diego Superior Court Case No. 729298 ........................................................ 17

*Bell v. Farmers Ins. Exch.,*

    115 Cal. App. 4th 715, 726, 765 (2004) ............................................................ 15

*Birch v. Office Depot,*

    S.D. Cal. 2007, USDC, Case No. 06 CV 1690 ................................................ 17

*Bluford v. Safeway, Inc.*

    (2013) 216 Cal.App.4th 872 ............................................................................ 13

*Boyd v. Bechtel Corp.,*

    485 F. Supp. 610, 622 (N.D. Cal. 1979) ........................................................ 10

*City and County of San Francisco v. Sweet,*

    12 Cal.4th 105 (1995) ...................................................................................... 15

*Class Plaintiffs v. Seattle,*

    955 F.2d 1268, 1276 (9th Cir. 1992) ................................................................ 9

*Cook v. Niedert,*

    142 F.3d 1004, 1015 (7th Cir. 1998) .............................................................. 21

*Dirienzo v. Dunbar Armored, Inc.,*

    USDC Southern District, Case No. CV-09-2745 DMS JMA ........................ 17

*Domino's Pizza Overtime Cases,*

    Orange County Superior Court Case No. JCCP 4498 ...................................... 17

*Dunn v. The Kroger Company, et al.,*

    Los Angeles Superior Court, Case No. BC 323252 ........................................ 18

*Early v. Superior Court,*

    79 Cal.App.4th 1420, 1433 (2000) .................................................................. 20

*Flannery v. California Highway Patrol,*

    61 Cal. App. 4th 629, 632 (1998) .................................................................... 19

*Gallen v. Gambro Healthcare, Inc.*,

    Orange County Superior Court, Case No. 04 CC 00571 ......................................... 17

*Gardner v. GC Services, LP.*,

    USDC Southern District, Case No. 10cv0997-IEG (CAB) .................................... 17

*Green, et al. v. Penske Logistics, L.L.C., et al.*,

    USDC Southern District, Case No. CV-09-0069 DMS (CAB) ............................... 17

*H&R Block Stores, Inc. v. Visa U.S.A., Inc.*,

    396 F.3d 96, 116 (2d Cir. 2005) ........................................................................... 10

*Hanlon v. Chrysler Corp.*,

    150 F.3d 1011, 1026 (9th Cir. 1998) ........................................................... 9, 10, 12

*Heritage Bond Litigation*,

    2005 WL 1594403 .................................................................................................... 9

*In re Bluetooth Headset Products Liability Litigation* ("*Bluetooth*"),

    654 F.3d 935, 946 (9th Cir. 2011) ......................................................................... 11

*In Re Consumer Privacy Cases*,

    175 Cal. App. 4th 545, 556 (2009) ........................................................................ 17

*Joel A. v. Giuliani*, 218 F.3d 132, 138

    (2d Cir. 2000) .......................................................................................................... 9

*Jones v. Casual Male Retail Group, Inc.*,

    San Diego Superior Court, Case No. 37-2009-00089721 ....................................... 18

*Ketchum v. Moses*,

    Cal.4th 1122 (2001) ............................................................................................... 18

*Kirkorian v. Borelli*,

    695 F. Supp.

    446, 451 (N.D. Cal. 1988) ..................................................................................... 10

*Koehl v. Verio, Inc.*

    142 Cal.App.4th 1313, 1328 (2006) ...................................................................... 20

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR          Case No ED CV17-00528
FINAL APPROVAL OF CLASS ACTION SETTLEMENT       *Consolidated with:* Case No. 17-01427

– iv –

*Konica Minolta Wage Cases*,

    Orange County Superior Court Case No. J.C.C.P. 4527 ......................................... 17

*Lealao v. Beneficial California, Inc.*,

    82 Cal. App. 4th 19 (2000) ......................................... 16

*Linney v. Cellular Alaska P'ship*,

    151 F.3d 1234, 1242 (9th Cir. 1998) ......................................... 12

*Mandujano v. Basic Vegetable Products, Inc.*,

    541 F. 2d 832, 837 (9th Cir. 1976) ......................................... 14

*Marshall v. Holiday Magic, Inc.*,

    550 F.2d 1173 (9th Cir. 1977) ......................................... 12

*Mayville, et al. v. Kor Hotel Group, L.L.C., et al.*,

    USDC Central District, Case No.CV-04-8461 ABC (RCx)................................... 17

*Millan v. Cascade Water Servs.*,

    No. 12-cv-01821, 2016 U.S. LEXIS 72198 *1, *28-*37 ......................................... 15

*New York Gaslight Club, Inc. v. Carey*,

    447 U.S. 54, 62 (1980).......................................... 19

*Officers for Justice v. Civil Service Comm. of City and County of San Francisco*,

    688 F. 2d 615, 625 (9th Cir. 1982) ......................................... 12

*PLCM Group, Inc. v. Drexler*,

    22 Cal.4th 1084 (2000 ......................................... 18

*Quinn v. State of California*,

    15 Cal.3d 162, 167 (1995). ......................................... 15

*Roberts v. Texaco*,

    979 F. Supp. 185 (S.D.N.Y. 1997) ......................................... 21

*Rodriguez v. West Publishing Corp.*,

    563 F.3d 948 (9th Cir. 2009) ......................................... 10

*Serrano v. Priest*,

    20 Cal.3d 25, 48 (1977) ("*Serrano III*")......................................... 15, 18

*Serrano v. Priest,*

   32 Cal.3d 621, 639 (1982) ("*Serrano IV*"). ........................................................19

*Staton v. Boeing,*

   327 F.3d 938, 977 (9th Cir. 2003) ...................................................................21

*Thayer v. Wells Fargo Bank,*

   92 Cal. App. 4th 819 (2001) ...........................................................................18

*Thornton v. East Texas Motor Freight,*

   497 F.2d 416, 420 (6th Cir. 1974) ...................................................................21

*Van Ba Ma v. Covidien Holding, Inc.,*

   2014 U.S. Dist. LEXIS 76359, *6-7 (C.D. Cal. 2014) ........................................12

Vincent v. Hughes Air West, Inc.

   (9th Cir. 1977) 557 F.2d 759 .........................................................................15

*Watson v. Raytheon Company,*

   USDC Southern District, Case No. CV-10-cv-00634 LAB RBB ...........................17

*Whiteway v. Fedex Kinkos Office & Print Services, Inc.,*

   2007 U.S. Dist. LEXIS 95398 (N.D. Cal. 2007) ...............................................20

*Wilcox v Albertsons,*

   San Diego Superior Court Case No. GIC833922 ..............................................17

**STATUTES**

Federal Rule of Civil Procedure 23 .........................................................................9

**OTHER AUTHORITIES**

Newberg on Class Actions, 3rd Ed., 1992, §14.03.....................................................17

## I.    INTRODUCTION

This motion seeks final approval of the non-reversionary $850,000.00 proposed wage and hour class action settlement by Plaintiffs Alan Atchison and James Blair ("Plaintiffs") on behalf of the 317 Class Members. In response to the Class Notice, no Class Members objected to the Settlement and only one requested exclusion from the Settlement. Therefore, there are 316 Participating Class Members.

The proposed Settlement of $850,000.00 is projected to pay Class Members an average payment estimated at $1,885.34 with the highest payment estimated at $8,351.87.[1] The Parties negotiated a settlement of class claims, the terms of which were preliminarily approved by this Court on March 4, 2019. As part of its March 4, 2019 preliminary approval order, the Court conditionally certified, for settlement purposes only, the following Class: all persons who are or have been employed by Defendant Ashley Distribution Services, Inc. ("ADS" or "Defendant") in the State of California as truck drivers in the position of California Less Than Load Drivers ("CA LTL"), California Point to Point Drivers ("CA PTP"), California Yard Drivers, California Shuttle Drivers, and non-California Drivers ("Non-CA Drivers"), to the extent that ADS's records show that the non-California Drivers made at least 1 trip into California at any time between February 8, 2013 and August 23, 3018 ("Class Period"). Dkt. # 38.

Plaintiffs now move for final approval of attorneys' fees in the amount of $212,500.00, which represents 25% of the Gross Settlement Amount ("GSA"). As will be demonstrated herein, Class Counsel's attorney fee request is supported using the percentage fee method and the lodestar method. Second, Plaintiffs move for final approval of payment of the litigation costs Class Counsel incurred in the amount of $14,846.10[2], all of which was incurred in litigating this matter. Third, Plaintiffs move for final approval of the Class Representative Enhancements and General Release

---

[1] Declaration of Stephanie Molina ("Molina Decl."), ¶ 16.
[2] The Settlement allots $30,000.00 for litigation costs. The difference between the actual costs incurred and the allotted amount will become part of the Net Settlement Amount, distributable to Participating Class Members.

Payments to Plaintiffs in a sum of $5,000.00 each, to compensate the Class Representatives for providing a general release of their claims against ADS – a release significantly greater than the Class Members provided – and for the risks they absorbed and time spent litigating the case. Plaintiffs played a vital role in representing Class Members in this case and spearheading the lawsuit to seek monetary relief on behalf of all Class Members. Fourth, Plaintiffs move for final approval of payment of $7,500.00 in administrative costs to ILYM Group, Inc. Fifth, Plaintiffs move for final approval of the $10,000.00 PAGA Payment and the payment to the Labor and Workforce Development Agency ("LWDA") for its share of the PAGA Payment ($7,500.00, which is 75% of $10,000.00; with the remaining $2,500.00 payable to Class Members).

For the reasons that follow, it is respectfully requested that the Court grant this motion and find the Settlement to be fair, reasonable, and adequate.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

This case involves wage and hour claims against ADS, a company headquartered in Wisconsin that offers cargo transportation services nationwide, including throughout California. ADS employs yard and shuttle drivers, CA PTP drivers, CA LTL drivers, and non-CA drivers who drove into California. On February 8, 2017, Plaintiff Atchison, a Non-CA driver, filed a complaint in the San Bernardino County Superior Court, case number CIVDS1702285 ("*Atchison* Action"). Plaintiff Atchison's complaint alleged that his piece rate pay did not pay for his rest breaks and non-driving time when he drove into California. He pled causes of action on behalf of himself and other similarly situated for failure to pay straight and overtime wages, failure to provide meal and rest periods, waiting time penalties, wage statement violations, and violation of Bus. Prof. Code §§ 17200 *et seq.* On April 13, 2017, Plaintiff Blair, another Non-CA driver, filed a complaint in the same Court, case number CIVDS1706807, alleging similar causes of action ("*Blair* Action"). Pursuant to the Class Action Fairness Act of 2005 (CAFA), 28 U.S.C. § 1332(d), ADS removed the *Atchison* Action on March 20, 2017 and the *Blair*

1  Action on July 17, 2017. Thereafter, Plaintiffs filed a consolidated complaint on

2  September 18, 2017, which alleges the above claims and adds a cause of action under

3  the Private Attorneys General Act (PAGA), Labor Code § 2698, *et seq.* Declaration of

4  David Mara ("Mara Decl."), ¶ 22.

5          a.  <u>Investigation</u>

6          The *Atchison* Parties met and conferred over a discovery plan prior to filing their

7  Rule 26(f) Report on April 14, 2017, which was later amended on May 3, 2017. The

8  Parties attended a Scheduling Conference on April 24, 2017 and, on May 3, 2017, the

9  Parties were ordered to complete private mediation no later than December 1, 2017. The

10  *Blair* Parties met and conferred regarding consolidation prior to filing their Joint Report

11  on August 18, 2017. By Order dated August 28, 2017, the Court ordered the *Blair*

12  Action to be consolidated with the *Atchison* Action. Thereafter, the parties engaged in

13  initial discovery in advance of mediation. Mara Decl. ¶ 23.

14          Plaintiffs propounded special interrogatories and requests for production of

15  documents, all seeking to discover information regarding ADS's operational policies

16  and practices, employee handbooks, ADS's meal and rest break policies, Plaintiffs'

17  personnel files, wage statements, and time records. Prior to attending mediation, ADS

18  produced these documents, in addition to workweek data, the breakdown of class

19  members per job title, the average hourly and piece-rate wage, and the average shift

20  length. ADS likewise served written discovery on Plaintiffs to determine the factual

21  basis for their claims. Mara Decl. ¶ 24.

22          b.  <u>Settlement Negotiations</u>

23          On November 29, 2017, the Parties engaged in a lengthy private mediation with

24  respected wage and hour mediator, Mark Rudy. After an all-day arm's-length

25  mediation, the Parties reached an agreement on Settlement, the terms of which were

26  initially memorialized in a Memorandum of Understanding. Thereafter, the Parties

27  negotiated a long form settlement agreement, of which the Parties now seek final

approval. Mara Decl. ¶ 25.

## III.    SUMMARY OF SETTLEMENT

### a.  <u>The Proposed Class</u>

The Settlement Agreement proposes a settlement for all Class Members within the Class Period. "Class Members" and the proposed "Class" are defined as:

> All persons who are employed or have been employed by Defendant ADS in the State of California as truck drivers during the Class Period in the position of CA LTL, CA PTP, California Yard Drivers, California Shuttle Drivers, and Non-CA Drivers to the extent Defendant's records show that the Non-CA Driver made at least 1 trip into California during the Class Period.[3]

There are 317 Class Members. Mara Decl. ¶ 26; Molina Decl. ¶ 5.

### b.  <u>PAGA Members</u>

As the Consolidated Complaint also includes claims for penalties under the PAGA, the Settlement Agreement proposes payments to PAGA Members – i.e. those Class Members who qualify as aggrieved employees within the statutory period and are eligible to receive penalties under PAGA for the alleged violations. Only PAGA Members will receive a pro rata share of 25% of the PAGA Payment, weighted according to their job title (with the remaining 75% payable to the California Labor and Workforce Development Agency or "LWDA"), to settle the PAGA Settled Claims for the PAGA Settlement Period.[4] "PAGA Members," of which there are 254, are defined as follows:

> All persons who are employed or have been employed by Defendant ADS in the State of California as truck drivers during the PAGA Settlement Period in the position of CA PTP, CA LTL, California Yard Drivers, California Shuttle Drivers and Non-CA Drivers where Defendant's records show that the Non-CA Driver made at least 1 trip into California during the PAGA Settlement Period.

Mara Decl. ¶ 27.

---

[3] The Class Period extends from February 8, 2013 to August 23, 2018, which is 150 days after full execution of the Settlement Agreement.

[4] April 13, 2016 to August 23, 2018, which is 150 days after full execution of the Settlement Agreement.

### c.  Settlement Terms

Under the Agreement, ADS shall pay $850,000.00 (referred to as the "Gross Settlement Amount" or "GSA"). Subject to the Court's final approval, the following deductions will be made from the GSA: (1) $5,000.00 to each Plaintiff/Class Representative to compensate them for their time and effort in bringing this action, and in exchange for a general release of all claims against ADS; (2) $212,500.00 (25% of the GSA) to Class Counsel, to compensate them for the work they have done on this case and the work that still remains to be done (i.e. securing final approval of the settlement, ensuring the administration of the settlement, and responding to class member inquiries); (3) $30,000.00 to Class Counsel to reimburse them for litigation expenses incurred in litigating this matter; (4) $15,000.00 in administration fees to ILYM Group, Inc., to compensate it for the work done and to be done in administering the Settlement; and (5) $7,500.00 to the LWDA for its share of the PAGA Payment (75% of the $10,000.00 allotted to PAGA penalties), with the remaining 25% or $2,500.00 paid to Class Members who are PAGA Members. Employer-side payroll taxes for the portion of the settlement payments paid to Class Members that is attributable to wages remains ADS' separate responsibility and shall not be paid out of the GSA.

After all deductions have been made from the GSA, an estimated Net Settlement Amount ("NSA") of $595,135.90, will be distributed to Settlement Class Members. Each Settlement Class Member's individual workweeks will be weighed according to the job title they held, as follows:

- CA PTP drivers shall be weighted at 100% - i.e. 1 workweek worked in this position will equal 1 workweek. This weighting reflects the fact that Plaintiffs contended that the piece rate pay received by CA PTP drivers failed to compensate them for their rest breaks and various non-driving tasks.
- CA LTL drivers shall be weighted at 75% - i.e. 1 workweek worked in this position will equal ¾ of a workweek. This weighting reflects the fact that CA LTL drivers were paid day pay, not piece rate pay, and as a result,

Plaintiffs could not rely on the piece rate theory to support their claims for unpaid wages.

- Non-CA drivers shall be weighted at 50% - i.e. 1 workweek worked in this position will equal ½ of a workweek in which ADS's records show that the Non-CA driver made at least one trip into California. This weighting reflects the fact that while the piece rate theory applies to these drivers, they rarely spent more than a few days in California in any workweek in which they drove into California, and thus they are being credited with only 1/2 of such workweeks.

- CA Yard or Shuttle drivers shall be weighted at 25% - i.e. ¼ workweek worked in this position will be ¼ of a workweek. This weighting reflects the fact that CA Yard and Shuttle drivers were hourly paid, and Plaintiffs could not rely on a piece rate theory to advance their claim for rest period violations.

ILYM will calculate the individual settlement payments by multiplying the individual Class Member's Workweeks Worked during the Class Period and as weighed by job title (discussed above), multiplied by the Workweek Rate. ILYM will calculate the Workweek Rate by dividing the NSA by the total of all Workweeks Worked by all Settlement Class Members (after being weighted by job title). Therefore, the amount of each Settlement Class Member's settlement payment is tied to the number of Workweeks Worked by the individual Class Member for ADS in California during the Class Period in comparison to all of the Class Members Workweeks Worked. Mara Decl. ¶ 28.

Following Final Approval of the Settlement, ADS will remit payment of the GSA to ILYM within 21 calendar days after the Effective Date. Ten days after receipt of the GSA, ILYM will distribute all payments required under the Settlement. Settlement Class Members and PAGA Members shall have 180 days after the checks are issued to cash them. After the Court granted preliminary approval, the Parties stipulated and the Court ordered that any uncashed check funds would be deposited in the General Fund of the State Controller's Office, of which Settlement Class Members could still obtain their settlement payments at a later date. Mara Decl. ¶ 29; Dkt.# 42.

### d. **Release of Claims**

In exchange for a settlement payment, Class Members are informed they will release the following claims:

Any and all claims for relief that occurred during the Class Period, whether suspected or unsuspected, which Plaintiffs or any Settlement Class Member (except those who opt out) have had, now have, or may discover in the future against the Released Parties or any of them for any or all claims alleged in the original complaints and/or Consolidated Complaint or which could have been alleged in the Consolidated Complaint based on the allegations, facts, matters, transactions or occurrences alleged therein, and shall specifically include without limiting the generality thereof all causes of action listed in the Consolidated Complaint, including: violation of minimum wage laws and straight time wages, violation of Labor Code sections 510 and 1194 (overtime wages), violation of Labor Code sections 226.7 and 512 (meal and rest periods), violation of Labor Code section 226 (record keeping and wage statements), violation of Labor Code sections 201-203 (waiting time penalties), PAGA Settled Claims, and violation of Business & Professions Code section 17200, *et seq*. (Unfair Business Practices and Unfair Competition), including violations alleged in the Complaint.  The release of the foregoing claims, extends to all theories of relief regardless of whether the claim is, was or could have been alleged as separate claims, causes of action, lawsuits or based on other theories of relief, whether under California law, federal law, state law or common law (including, without limitation, as violations of the California Labor Code, the Wage Orders, applicable regulations, California's Business and Professions Code section 17200) and any and all claims under the Fair Labor Standards Act ("FLSA") (consenting to join for purposes of the FLSA to be effectuated by negotiating the settlement check(s) as explained in the Class Notice and notation on the settlement check(s)).  "Settled Claims" includes all types of relief available for the above-referenced claims, including any claims for damages, restitution, losses, penalties, fines, liens, attorneys' fees, costs, expenses, debts, interest, injunctive relief, declaratory relief, or liquidated damages.  "Settled Claims" expressly *excludes* all other claims, including claims for wrongful termination, unemployment insurance, disability, and workers' compensation, and claims outside of either Class Period.  Settled Claims also includes an express waiver of all benefits under section 1542 of the

PLAINTIFF'S MOTION FOR FINAL APPROVAL

Case No ED CV17-00528
*Consolidated with:* Case No. 17-01427

– 7 –

California Civil Code as to the Settled Claims *only*, as well as under any other federal or state statutes or common law principles of similar effect. Mara Decl. ¶ 30. The Class Period extends from February 8, 2013 to the earlier of 150 days after full execution of the Settlement Agreement or entry of the preliminary approval order. August 23, 2018 was 150 days after the full execution of the Settlement Agreement and earlier than the date of the preliminary approval order. Therefore, the Class Period is from February 8, 2013 through August 23, 2018. Mara Decl. ¶ 31.

In exchange for a pro-rata share of the PAGA Payment, PAGA Members are informed they will release the following claims:

> All claims, causes of action, damages, wages, benefits, expenses, penalties, debts, rights, demands, liabilities, obligations, attorneys' fees, costs, and any other form of relief or remedy in law, equity, or whatever kind or nature, whether known or unknown, suspected or unsuspected sought pursuant to the PAGA that occurred at any time during the PAGA Settlement Period[5] and that is predicated upon any Labor Code violations of the PAGA alleged in the Consolidated Complaint in the Action, including, but not limited to: violation of minimum wage laws and straight time wages, violation of Labor Code sections 510 and 1194 (overtime wages), violation of Labor Code sections 226.7 and 512 (meal and rest periods), violation of Labor Code section 226 (record keeping and wage statements), violation of Labor Code sections 201-203 (waiting time penalties).

Mara Decl. ¶ 32. These claims were alleged in the Consolidated Complaint and are tied to the allegations contained therein. *Id.* at ¶ 33.

## IV.  THE SETTLEMENT NOTICE PROCESS WAS SUCCESSFUL

### a.  Dissemination Of The Class Notice

Preliminary Approval was granted on March 4, 2019. Dkt.# 38. At that time, ILYM Group, Inc. ("ILYM") was appointed by the Court as the Settlement Administrator. ILYM has complied with this Court's orders concerning dissemination of the Class Notice by first-class regular U.S. Mail. The Class Notice was mailed to 317 Class Members on April 3, 2019. Molina Decl. ⁋ 7. ILYM performed a skip trace on

---

[5] April 13, 2016 to the earlier of 150 days after full execution of the Agreement or entry of preliminary approval.

the five Class Notices that were returned without forwarding addresses to locate new addresses. Four Class Notices were re-mailed. Molina Decl. ⁋ 8. Ultimately, one Class Notice was deemed undeliverable. Molina Decl. ⁋ 10.

### b. No Objections And Only One Request For Exclusion Was Received

The deadline to submit an objection to the Settlement or a request for exclusion from the Settlement was May 18, 2019. No objections have been filed with the Court or submitted to ILYM and only one request for exclusion from the Settlement was received by ILYM. Molina Decl. ⁋⁋ 11-12. The one request for exclusion represents 0.3% of the total Class Members. Therefore, under the Settlement, 316 participating Class Members, representing 99.68% of the total Class, will receive a Settlement Payment. Molina Decl. ⁋ 14.

### c. Challenges To Employment History

ILYM did not receive any disputes submitted by Class Members challenging the number of workweeks that they are entitled to under the Settlement. Molina Decl. ⁋ 13.

## V.    DISCUSSION

### a. The Settlement Meets The Standards Governing Final Approval

Matters that have been filed as class actions require court approval before a settlement can be consummated. *See* Fed. R. Civ. Proc. ("FRCP") 23(e). FRCP 23 (e) provides that any compromise of a class action must receive Court approval. The Court has broad discretion to grant approval and should do so where the proposed settlement is "fair, adequate, reasonable, and not a product of collusion." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1026 (9th Cir. 1998); *Joel A. v. Giuliani,* 218 F.3d 132, 138 (2d Cir. 2000). In determining whether a settlement should be approved, the Ninth Circuit has a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Heritage Bond Litigation,* 2005 U.S. Dist. LEXIS 13555, *9 (C.D. Cal. June 10, 2005) (*citing Class Plaintiffs v. Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992)).

Approval of a class action settlement involves a two-step process. In determining

whether to grant final approval of the settlement, a court examines the terms for overall fairness and, in so doing, balances the following factors: the strength of the plaintiff's case; the risk, expense, complexity and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed; the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; the reaction of the class members to the proposed settlement. *Hanlon*, 150 F.3d at 1026.

Here, the proposed Settlement was reached only after undertaking a robust factual and legal investigation into Defendant's wage and hour policies and pay structures, which culminated in the Parties reaching an agreement to settle after attending a full day of arm's length mediation with a neutral mediator. The Settlement amount takes into consideration the significant risks with regard to the certifiability of the Plaintiffs' claims, as well as the difficulties associated with prevailing on the merits. In light of these risks, the Settlement amount is well within the ballpark of reasonableness.

### i. The Settlement Was A Result Of Arm's Length Negotiations

The Ninth Circuit has shown longstanding support of settlements reached through arm's length negotiation by capable opponents. In *Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009), the Ninth Circuit expressly opined that courts should defer to the "private consensual decision of the [settling] parties." *Id.* at 965, citing *Hanlon*, 150 F.3d at 1027. "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." *H&R Block Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 116 (2d Cir. 2005); se*e also Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988) (opinion of experienced counsel is entitled to considerable weight); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979) (recommendations of plaintiffs' counsel should be given a presumption of reasonableness).

The Parties attended a full day of mediation in this matter, held on November 29,

2017. During this mediation, the Parties engaged in extensive, arm's-length negotiations mediated by respected wage and hour mediator, Mark Rudy. After considerable negotiation, the Parties were able to reach a settlement, the terms of which were initially memorialized in a Memorandum of Understanding. Thereafter, the Parties negotiated the long form settlement agreement of which the Parties now seek the Court's final approval of in the instant motion.

### ii. *In re Bluetooth Headset Products Liability Litigation* Factors Are Not Present Here

In *Bluetooth,* the Ninth Circuit articulated additional factors that need to be considered, especially where a settlement has been reached prior to formal class certification. *In re Bluetooth Headset Products Liability Litigation* ("*Bluetooth*"), 654 F.3d 935, 946 (9th Cir. 2011). As such, settlement agreements reached prior to class certification must withstand a higher level of scrutiny for signs of collusion or other conflicts of interest than ordinarily required under Rule 23(e). The three signs *Bluetooth* instructs trial courts to look for are:

1. When class counsel receives a disproportionate distribution of the settlement, or when the class receives no monetary distribution, but counsel is amply rewarded;
2. When the parties negotiate a 'clear sailing' arrangement providing for the payment of attorney's fees separate and apart from class funds without objection by defendant;
3. When the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund. *Id* at 947.

This Settlement passes the *Bluetooth* test. The Net Settlement Fund is nearly 2.7 times larger than the fees requested by Class Counsel, which is the accepted federal benchmark of 25% of the Settlement Fund. Additionally, although the settlement agreement states that Defendant will not object to attorney fees up to 25% of the GSA, any amount requested by Class Counsel and not awarded shall become part of the NSA, distributable to Class Members. Accordingly, unlike the settlement agreement in *Bluetooth,* the instant settlement cannot be said to arouse suspicion of collusion.

### iii.  The Settlement Is Fair

When evaluating the settlement terms for purposes of ruling on whether to finally approve it, the Court is to review the strength of a plaintiff's case, including "the probable outcome of a trial on the merits of liability and damages as to the claims, issues, or defenses of the class and individual class members." *Van Ba Ma v. Covidien Holding, Inc.*, 2014 U.S. Dist. LEXIS 76359, *6-7 (C.D. Cal. 2014) (*citing Marshall v. Holiday Magic*, *Inc.*, 550 F.2d 1173 (9th Cir. 1977)). In ruling on final approval, the "fairness hearing is not to be turned into a trial or a rehearsal for trial on the merits." *Id.* (*quoting Officers for Justice v. Civil Serv. Comm'n of the City and Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)).

There is no standard or benchmark for determining whether a settlement is fair. "Ultimately the district court's determination is nothing more than 'an amalgam of delicate balancing, gross approximations and rough justice.'" *Officers for Justice v. Civil Service Comm. of City and County of San Francisco*, 688 F. 2d 615, 625 (9th Cir. 1982). A court should weigh the benefits that the settlement will realize for the class against the uncertainty of litigation and the possibility that the class members would obtain no relief in the absence of a settlement. *See Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ("...it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements."); *see also Hanlon*, 150 F.3d at 1026 (When considering the fairness of a proposed class settlement, courts consider the strength of a plaintiff's case against the risk, expense, complexity and likely duration of further litigation.).

As discussed at length in Plaintiffs' Motion for Preliminary Approval, the liability questions in this case touched on a wide expanse of California's wage and hour laws, many of which are subject to an ever-changing legal landscape, as administrative agencies and appellate cases continually issue opinions that can dramatically affect theories of liability. In sum, Plaintiffs claim that ADS violated California law by not separately paying piece-rate drivers for non-driving work (i.e. drop and hook, fueling,

paperwork, pre- and post-trips). ADS contends that the pay provided to piece-rate drivers was intended to compensate drivers for all work they performed, not just time spent driving. Plaintiffs based their rest break claim on Plaintiffs' interpretation that ADS's piece-rate pay structures uniformly do not provide for rest breaks in accordance with the Wage Orders, Labor Code 226.7, and *Bluford v. Safeway, Inc.* (2013) 216 Cal.App.4th 872. ADS contends that its piece-rate pay structure compensated drivers for rest breaks, as compensation for rest breaks is built and factored into the piece rate. Further, ADS argues any potential liability would be cut off beginning January 1, 2016, as it complied with the requirements under Labor Code § 226.2 – which required ADS to separately pay for rest breaks. Plaintiffs further contended that ADS does not provide meal breaks in the timeframes required under California law. ADS contends it has an elaborate and documented policy and practice of ensuring drivers have the opportunity to take meal breaks at legally compliant times.[6] Further, as to Non-CA drivers, ADS contended that they were not covered by the California Labor Code for their infrequent trips into California.

### b. <u>Sufficient Discovery and Investigation Has Occurred</u>

The *Atchison* Parties met and conferred over a discovery plan prior to filing their Rule 26(f) Report on April 14, 2017, which was later amended on May 3, 2017. The Parties attended a Scheduling Conference on April 24, 2017 and, on May 3, 2017, the Parties were ordered to complete private mediation no later than December 1, 2017. The *Blair* Parties met and conferred regarding consolidation prior to filing their Joint Report on August 18, 2017. By Order dated August 28, 2017, the Court ordered the *Blair* Action to be consolidated with the *Atchison* Action. Thereafter, the parties engaged in initial discovery in advance of early mediation. Mara Decl. ¶ 34.

Plaintiffs propounded special interrogatories and requests for production of documents, all seeking to discover information regarding ADS's operational policies and practices, employee handbooks, ADS's meal and rest break policies, Plaintiffs'

---

[6] The full discussion of Plaintiffs' claims are discussed at length in Plaintiffs' Motion for Preliminary Approval. See Dkt.# 33 at pages 21-24.

personnel files, wage statements, and time records. Prior to attending mediation, ADS produced these documents, in addition to workweek data, the breakdown of class members per job title, the average hourly and piece-rate wage, and the average shift length. ADS likewise served written discovery on Plaintiffs to determine the factual basis for their claims. Mara Decl. ¶ 35.

### c. Class Counsel Have Extensive Experience Acting As Class Counsel

Class Counsel is highly experienced and knowledgeable regarding complex wage and hour class actions like this one. Mara Decl. ¶¶ 1-8, 11, 36; Nordrehaug Decl. ¶ 2. Indeed, Counsel from Mara Law Firm, PC, was class counsel in *Hohnbaum et al. v. Brinker Restaurant Corp et al.*, which is the subject case in the landmark decision of *Brinker Restaurant Corp. v. Superior Court*, 53 Cal.4th 1004 (2012). Mara Decl. ¶ 4. Class counsel have prosecuted numerous cases on behalf of employees for California Labor Code violations and thus are experienced and qualified to evaluate the class claims and to evaluate settlement versus trial on a fully informed basis, and to evaluate the viability of the defenses. Mara Decl. ¶ 1-8, 11; Nordrehaug Decl. ¶ 2. This experience instructed Class Counsel on the risks and uncertainties of further litigation and guided their determination to endorse the proposed Settlement.

### d. The Class Members' Response To The Settlement Is Further Evidence That The Settlement Is Fair And Reasonable

The Ninth Circuit has held that the number of class members who object to a proposed settlement is a factor to be considered in determining a settlement's fairness. *Mandujano v. Basic Vegetable Products, Inc.*, 541 F. 2d 832, 837 (9th Cir. 1976). Here, not a single Class Member has objected to the settlement and only one class member requested to be excluded from the Settlement. Molina Decl. ¶¶ 11-12. The lack of objections and low number of requests for exclusion evidences the class members' endorsement of this non-reversionary settlement.

### e. The Court Should Approve The Requested Attorneys' Fees And Costs, Class Representative Enhancement/General Release Payments, And Settlement Administration Fees

#### i. The Attorneys' Fee Request Is Reasonable Under The

### "Common Fund/Percentage" Analysis

Both California and federal courts have recognized that an appropriate method for awarding attorney's fees in class actions is to award a percentage of the "common fund" created as a result of the settlement. *Bell v. Farmers Ins. Exch.*, 115 Cal. App. 4th 715, 726, 765 (2004).[7]

### 1. The Common Fund Doctrine

The purpose of the common fund/percentage approach is to "spread litigation costs proportionally among all the beneficiaries so that the active beneficiary does not bear the entire burden alone." Vincent v. Hughes Air West, Inc. (9th Cir. 1977) 557 F.2d 759. In *Quinn v. State of California*, the Court stated: "[O]ne who expends attorneys' fees in winning a suit which creates a fund from which others derive benefits may require those passive beneficiaries to bear a fair share of the litigation costs." *Quinn v. State of California*, 15 Cal.3d 162, 167 (1995). Similarly, in *City and County of San Francisco v. Sweet*, the California Supreme Court recognized that the common fund doctrine has been applied "consistently in California when an action brought by one party creates a fund in which other persons are entitled to share." *City and County of San Francisco v. Sweet*, 12 Cal.4th 105, 110 (1995).

The reasons for applying the common fund doctrine include:

> …fairness to the successful litigant, who might otherwise receive no benefit because his recovery might be consumed by the expenses; correlative prevention of an unfair advantage to the others who are entitled to share in the fund and who should bear their share of the burden of its recovery; encouragement of the attorney for the successful litigant, who will be more willing to undertake and diligently prosecute proper litigation for the protection or recovery of the fund if he is assured that he will be properly and directly compensated should his efforts be successful. *Id.*

The common fund approach continues to be a preferred method of awarding fees. Since

---

[7] In addition, section 216(b) provides that a court shall "in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). Courts in hybrid class and collective actions may utilize standards set forth for class actions. *See Millan v. Cascade Water Servs.*, No. 12-cv-01821, 2016 U.S. LEXIS 72198 *1, *28-*37 (E.D. Cal. June 2, 2016) (Analyzing attorneys' fees in hybrid class and collective action under standards set forth class actions.).

*Serrano v. Priest*, 20 Cal.3d 25, 48 (1977) ("*Serrano III*"), there has been a "ground swell of support for mandating the percentage-of-the-fund approach in common fund cases." *Lealao v. Beneficial California, Inc.*, 82 Cal. App. 4th 19, 27 (2000). *Lealao* discusses at length the judicial perception of the lodestar method as unfair and arbitrary for fostering collusively low settlements for a high fee award and for placing the trial court in the unfavorable position of determining reasonable hours and billing rates. *Id.* at 29-30.

Class Counsel has undertaken representation at their own expense, with compensation contingent on providing a benefit to the class. Class Members and Settlement Class Members will substantially benefit by the terms of the Settlement. Because there is a defined and clearly traceable monetary benefit to the class and collective, the Court can base an award of attorneys' fees on the class members' benefit, using a common fund approach. Class Counsel's request for 25% of the common fund is fair compensation for obtaining an excellent result for the Class Members and Settlement Class Members and, in doing so, undertaking complex, risky, expensive, and time-consuming litigation purely on a contingent basis.

### 2. The Percentage Requested Is Reasonable

The fees here were wholly contingent, and the case presented far more risk that the usual contingent fee case. There was the prospect of the enormous cost inherent in class action litigation, as well as a long battle with New Bern who had retained experienced, reputable legal counsel. That prospect has previously become reality, in both trial courts and the Court of Appeals, and in other wage and hour class litigation. Class Counsel risked not only a great deal of time, but also a great deal of expense, to ensure the successful litigation of this action on behalf of all Class and Settlement Class Members.

Per Newberg on Class Actions, "no general rule can be articulated on what is a reasonable percentage of a common fund. Usually 50% of the fund is the upper limit on a reasonable fee award from a common fund in order to assure that the fees do not

consume a disproportionate part of the recovery obtained for the Class, although somewhat larger percentages are not unprecedented." Newberg on Class Actions, 3rd Ed., 1992, §14.03. Regarding percentage fee awards, Newberg states: "[A]chievement of a substantial recovery with modest hours expended should not be penalized but should be rewarded for considerations of time saved by superior services performed." *Id.* at § 14.01.

### 3. The Fee Requested Is Within The Range Of Fees Approved In Comparable Cases

The requested fee of $212,500.00 is 25% of the Settlement Fund and is in line with the federal "benchmark," which California has endorsed. *In Re Consumer Privacy Cases*, 175 Cal. App. 4th 545, 556 (2009). A review of class action settlements over the past several years shows that courts have historically awarded fees in the range of 20% to 50%, depending on the circumstances of the case.[8] California Superior and District

---

[8] For example:

(1)    *Birch v. Office Depot*, S.D. Cal. 2007, USDC, Case No. 06 CV 1690 (Hon. Dana M. Sabraw--awarding attorney's fees of 40% of $16,000,000 settlement in pre-certification meal/rest period class action);

(2)    *Watson v. Raytheon Company*, USDC Southern District, Case No. CV-10-cv-00634 LAB RBB (Hon. Larry B. Burns – awarding attorneys' fees of $666,666.67, 33-1/3% of a $2,000,000 settlement in a certified misclassification class action);

(3)    *Dirienzo v. Dunbar Armored, Inc.*, USDC Southern District, Case No. CV-09-2745 DMS JMA, (Hon. Dana M. Sabraw – awarding attorneys' fees of $500,000, 33-1/3% of $1,500,000 settlement in a pre-certification expense reimbursement, rest and meal period class action);

(4)    *Mayville, et al. v. Kor Hotel Group, L.L.C., et al.*, USDC Central District, Case No.CV-04-8461 ABC (RCx) (Hon. Audrey B. Collins -- awarding attorneys' fees of $480,000, 30% of $1,600,000 settlement in pre-certification meal and rest period class action);

(5)    *Albrecht v. Rite-Aid*, San Diego Superior Court Case No. 729298 (Hon. J. Richard Haden -- awarding attorney's fees of 33% of $25,000,000 settlement in certified overtime class action);

(6)    *Domino's Pizza Overtime Cases*, Orange County Superior Court Case No. JCCP 4498 (Hon. Gail A. Andler -- awarding attorneys' fees of $1,500,000, 30% of $5,000,000 settlement in pre-certification meal and rest period class action);

(7)    *Wilcox v Albertsons*, San Diego Superior Court Case No. GIC833922 (Hon. Linda B. Quinn -- awarding attorneys' fees of 33% of $22,500,000 settlement in certified rest and meal class action);

(8)    *Konica Minolta Wage Cases*, Orange County Superior Court Case No. J.C.C.P. 4527 (Hon. David C. Velasquez—awarding attorneys' fees of 33% of $6,000,000 settlement in pre-certification expense reimbursement class action);

(9)    *Green, et al. v. Penske Logistics, L.L.C., et al.*, USDC Southern District, Case No. CV-09-0069 DMS (CAB) (Hon. Dana M. Sabraw – awarding attorneys' fees of 33% of a $500,000 settlement in a pre-certification vacation policy class action);

(10)    *Gardner v. GC Services, LP.*, USDC Southern District, Case No. 10cv0997-IEG (CAB) – (Chief Justice Irma E. Gonzalez – awarding attorneys' fees of 30% of a $975,000 settlement in a pre-certification failure to pay straight and overtime wages class action);

PLAINTIFF'S MOTION FOR FINAL APPROVAL

Case No ED CV17-00528
*Consolidated with: Case No. 17-01427*

Court judges have adopted the percentage method for determining fee awards in the range of that requested by Class Counsel herein or even larger. As the fee requested here is less than the fees customarily awarded in California under the common fund doctrine, it is respectfully requested the Court grant this request at final approval. The reasonableness of the fee is further evidenced when cross-checked against the Lodestar Method.

### 4. A Lodestar Cross-Check With A Modest Multiplier Confirms the Reasonableness Of The Requested Fee

Class Counsel's fee request is also reasonable when calculated using the lodestar method. Under the lodestar method, a base fee amount is calculated from a compilation of time reasonably spent on the case and the reasonable hourly compensation of the attorney. *Serrano III*, 20 Cal.3d *at* 48. The court then enhances this lodestar figure by a "multiplier" to account for a range of factors, such as the novelty and difficulty of the case, its contingent nature, and the degree of success achieved.[9] To date, Class Counsel has worked 414.3 hours on this case. Applying Class Counsel's hourly rates to the total hours worked results in a lodestar fee of $255,786.00. Mara Decl. ¶ 37; **Exhibit 1**. Class Counsel respectfully request attorneys' fees in the amount of $212,500.00 (25% of the settlement). All of the work and tasks performed by Class Counsel were reasonable and necessary to the prosecution of this case. Mara Decl. ¶ 38; **Exh. 1**.

### ii. Counsel's Hourly Rates Are Reasonable

Class Counsel's hourly rates are between $395 and $875 and are in line with rates approved for wage and hour class action attorneys in this jurisdiction. A reasonable hourly rate is the prevailing rate charged by attorneys of similar skill and experience in

---

(11)    *Gallen v. Gambro Healthcare, Inc.*, Orange County Superior Court, Case No. 04 CC 00571 (Hon. Nancy Wieben Stock – approving award of attorneys' fees 30% of a$17,500,000 settlement in a pre-certification overtime wages class action);

(12)    *Dunn v. The Kroger Company, et al.*, Los Angeles Superior Court, Case No. BC 323252 (Hon. Elihu M. Berle – approving attorneys' fees of 30% of a $19,500,000 in a pre-certification meal and rest break class action); and

(13)    *Jones v. Casual Male Retail Group, Inc.*, San Diego Superior Court, Case No. 37-2009-00089721 (Hon. Kevin A. Enright – approving attorneys' fees of 33% of a $299,500 in a pre-certification misclassification class action).

[9] *Id.* at 49; *see also Ketchum v. Moses*, Cal.4th 1122, 1132-36 (2001); *PLCM Group, Inc. v. Drexler*, 22 Cal.4th 1084 (2000); *Thayer v. Wells Fargo Bank*, 92 Cal. App. 4th 819, 834 (2001), ("[t] there is no … rule limiting the factors that may justify an exercise of judicial discretion to [adjust the] lodestar").

the relevant community. *PLCM Group, Inc. v. Drexler*, 22 Cal.4th 1084, 1095 (2000). When determining a reasonable hourly rate, courts may consider factors such as the attorney's skill and experience, the nature of the work performed, the relevant area of expertise, and the attorney's customary billing rates. *Flannery v. California Highway Patrol*, 61 Cal. App. 4th 629, 632 (1998).

Class Counsel's skill and experience support their hourly rates. Furthermore, other wage and hour attorneys working as class counsel before California courts charge comparable, if not higher, rates. *See* **Exhibit 2** to Mara Decl. (copy of Westlaw Court Express's Legal Billing Report, Volume 14, Number 3, California Region for December 2012 and 2012 National Law Journal survey of hourly billing rates for Partners and Associates); **Exhibit 3** to the Mara Decl. (2012 Richard Pearl Declaration in *Hohnbaum v. Brinker Restaurant Corp.*, SDSC No. GIC834348).

### iii.  Counsel's Total Hours Are Reasonable

In determining a lodestar, reasonable hours include, in addition to time spent during litigation, the time spent before the action is filed, including time spent interviewing the clients, investigating the facts and the law, and preparing the initial pleadings. *See New York Gaslight Club, Inc. v. Carey*, 447 U.S. 54, 62 (1980).  Further, the fee award should include fees incurred to establish and defend the attorneys' fee claim. *Serrano v. Priest*, 32 Cal.3d 621, 639 (1982) ("*Serrano IV*").

To date, Class Counsel has worked a total of 426.7 hours on this case. Mara Decl. **Exh. 1**. The work performed by Class Counsel was justified in order to achieve a Settlement that will provide valuable consideration to the Class and Settlement Class Members.

### iv.  The Costs of Litigation Were Reasonable And Should Be Approved

Class Counsel seek reimbursement of their actual litigation costs and expenses in the sum of $14,846.10. These costs were all reasonable and necessary to the prosecution of this case and are fair and reasonable by Defendants.  Mara Decl. ¶ 39; **Exh. 1**.

### v. The Requested Class Representative Enhancement/General Release Payments Are Reasonable

The Settlement Agreement provides for an enhancement and general release payment to each of the Class Representatives, Mr. Atchison and Mr. Blair, in the amount of $5,000.00 each. The requested award is appropriate and reasonable and unopposed by Defendant. This payment is made, in part, in exchange for Plaintiffs providing Defendants with a general release of their claims. This general release is far greater than the release signed by class members. *Id.* In addition, to support of their award request, Plaintiffs submitted declarations detailing the efforts they expended on behalf of the class in order to advance this case to its successful conclusion. *See generally* Declarations of Alan Atchison and James Blair. There is no question that this case would not have reached the same result but for Plaintiffs' involvement and input at all stages of the litigation.

As representative for the absent class members, Plaintiffs risked a potential judgment taken against them for attorneys' fees and costs if this matter had not been successfully concluded. Case law holds that a losing party is liable for the prevailing party's costs, *Early v. Superior Court*, 79 Cal.App.4th 1420, 1433 (2000), and in some wage and hour actions, such as this case, pursuant to California Labor Code § 218.5, for attorneys' fees as well. Though the fee agreement provides that Class Counsel would pay such costs, Plaintiffs would nevertheless have had a cost bill entered against them leaving them ultimately liable for potentially hundreds of thousands of dollars in the unexpected possibility that Class Counsel did not meet their obligation to cover those costs.

Unfortunately, there have been several judgments entered against class representatives, e.g. *Koehl v. Verio, Inc*. 142 Cal.App.4th 1313, 1328 (2006) (a wage and hour class action where Defendant prevailed at trial, the named Plaintiffs were held liable, jointly and severally for the Defendant's attorneys' fees); *Whiteway v. Fedex*

*Kinkos Office & Print Services, Inc.,* 2007 U.S. Dist. LEXIS 95398 (N.D. Cal. 2007) (a wage and hour misclassification case lost on summary judgment, after the case was certified, the named Plaintiff was assessed costs in the sum of $56,788.). The risk of payment of Defendant's costs, in itself alone, is a sufficient basis for an award of the requested enhancement sum. Few individuals are willing to take this risk, and it is clear that the appointed Class Representatives here championed a cause on behalf of others with potentially huge monetary risks.

Courts have regularly and routinely granted approval of settlements containing such enhancements. *See,* e.g., *Staton v. Boeing,* 327 F.3d 938, 977 (9th Cir. 2003).[10] In Class Counsel's experience, the typical enhancement award in wage and hour class action settlements ranges from $5,000 to $75,000, although some awards may be higher. Very commonly there is more than one class representative who receive awards in the above range. Mara Decl. ¶ 40.

Additionally, it is common knowledge that the modern-day work force is quite mobile, with employees holding several jobs in a career during their lifetime. It is also true that prospective employers in this computer, high-tech age "Google" and/or do extensive background checks and have access to Court databases to see if applicants have ever filed a lawsuit or have ever been sued. Here, Plaintiffs litigated against Defendant for a substantial sum of money by their courage to step forward to vindicate not only their own rights but also, those of the similarly situated individuals, all of whom will now receive substantial payments due to the initiation of this action. Such conduct will not be lost on a prospective employer who has to choose between an applicant who has never sued an employer and one who has done so. The requested enhancement far from compensates Plaintiffs for opportunities they may lose in the future because of the exercise of a Constitutional right to Petition the Courts for redress of a grievance.

---

[10] *See,* e.g., *Cook v. Niedert,* 142 F.3d 1004, 1015 (7th Cir. 1998); *Roberts v. Texaco,* 979 F. Supp. 185 (S.D.N.Y. 1997) ("present or past employee whose present position or employment credentials or recommendation may be at risk by reason of having prosecuted the suit, who therefore lends his or her name and efforts to the prosecution of litigation at some personal peril, a substantial enhancement award is justified"); *Thornton v. East Texas Motor Freight,* 497 F.2d 416, 420 (6th Cir. 1974) ("We also think there is something to be said for rewarding those drivers who protect and help to bring rights to a group of employees who have been the victims of discrimination.").

The enhancement request is modest for the work performed, risks undertaken for payment of fees and costs if this case had not been successfully concluded, stigma on future employment opportunities, and the benefits all members of the class as well as all current and future class members will enjoy as a result of Plaintiffs' efforts. Thus, it is requested the court finally approve the Class Representatives' enhancement and general release payments.

### vi. The Court Should Approve The Settlement Administration Fee

The Parties agreed to hire ILYM to be the Settlement Administrator, a choice the Court approved when granting preliminary approval. ILYM was responsible for mailing the Class Notice to class members, obtaining better addresses for undeliverable Class Notices, responding to class member inquiries, providing weekly status reports to all counsel, receiving all communications from the class members, and providing a declaration documenting its duties and responsibilities to ensure the class members were given notice of the Settlement. Molina Decl. ¶ 3. Following the grant of final approval, ILYM will calculate the payments to participating class members, calculate the withholding taxes, and transmit to the appropriate government agencies, draft and send letters together with the individual Settlement Shares to participating class members, distribute other payments ordered by the Court, follow up with un-cashed checks, and perform such other duties as described in the settlement agreement. Molina Decl. ¶ 3. ILYM's fee of $7,500.00 for services rendered and to be rendered is fair and reasonable and should be granted. Molina Decl. ¶ 17.

### vii. The Court Should Approve The PAGA Payment To The LWDA

The payment of $7,500.00 (75% of $10,000.00) to the LWDA for its share of the applicable penalties claimed under the California Labor Code's Private Attorney General Act of 2004, as amended ("PAGA"), is reasonable under the circumstances. The Parties negotiated a good faith amount to the LWDA. The sum to be paid to the LWDA was not the result of self-interest at the expense of other Class Members. The LWDA was provided notice of the Settlement concurrently with the filing of the

preliminary approval motion and the instant motion. Plaintiff did not receive a response or objection to the Settlement from the LWDA. Mara Decl. ¶ 41. Thus, Plaintiffs request the Court finally approve the sum of $7,500.00 for payment to the LWDA.

## VI.    CONCLUSION

In light of the foregoing, Plaintiffs request the Court find the Settlement fair, reasonable, and adequate and grant this Motion for Final Approval. Plaintiffs further request the Court approve the requested attorneys' fees, litigation costs, class representative enhancement payments, settlement administration fee, and PAGA payment. Last, Plaintiff respectfully requests the Court enter final judgment in this matter.

Dated: May 24, 2019                    **MARA LAW FIRM, PC**

                                       By:/s/ *Jamie Serb*_____
                                          Attorneys for Plaintiffs